**In re MANDALAY SHORES, Debtor.**

**Bankruptcy No. 81–547.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 20, 1986.

Charles Medearis, St. Petersburg, Fla., William O'Malley, Jawdet I. Rubaii, Clearwater, Fla., for debtor.

Krooth & Altman, Victor A. Altman, O'Connor & Hannon, Washington, D.C., Laventhol & Horwath, Laura Kalick, for firm.

Case, Kimpton & Burke, Shirley Arcuri, for applicant.

Clyde Renfroe, Shirley Arcuri, Tampa, Fla., Straske, Farfante, Segall & Arcuri, P.A., R.C. Farfante, Tampa, Fla., for Receiver.

George Blume, Clearwater, for Creditors Committee.

## ORDER ON APPLICATION FOR ALLOWANCE BY PROFESSIONALS

ALEXANDER L. PASKAY, Chief Judge.

This is a dismissed Chapter 11 case and ordinarily the Order of Dismissal would have brought down the curtain on the long journey of Mandalay Shores Apartment Cooperative (Debtor), the Debtor, a journey which led nowhere. In retrospect, this fact should have been obvious from day one to all, including to this Court. No one, including this Court, realized at the outset that due to the preconceived notion of the management in charge of the affairs of this Debtor (a notion which was totally unrealistic and legally untenable), there was no way to ever achieve a just and equitable resolution of the problem of the Debtor through the mechanism of a Chapter 11, at least not on the terms proposed by the Debtor.

Without going into any details of this aborted Chapter 11 case, it shall suffice to state that on October 25, 1985, this Court entered an Order and dismissed this Chapter 11 case after almost five years of frustration and repeated unsuccessful attempts by the Debtor to obtain confirmation of its several plans of reorganization. Ordinarily, this turn of events might have resulted in a conversion of this Chapter 11 case to a liquidation case under Chapter 7 inasmuch as the Debtor has almost $2,000,000 in cash on deposit. However, because the Debtor is not a monied business or commercial corporation, it was not eligible to be an involuntary debtor under Chapter 7 by virtue of § 303(a) of the Bankruptcy Code, and because it was unwilling to convert this Court had no choice but to enter an order of dismissal when the last Plan of Reorganization failed to obtain confirmation. This, of course, presented a very difficult administrative problem, a problem relating to the numerous and sundry applications for allowance filed by professionals during the pendency of the Chapter 11 case, professionals who, in some capacity or another, represented this Debtor at the various stages of this utterly frustrating and non-productive Chapter 11 case. One can hardly find a more appropriate setting in which the application of an old Latin proverb would have been more appropriate than the very setting in which this Chapter 11 case ended up. This proverb reads "Parturient montes nascitur ridiculus mus" which in translation means that mightily labored the mountains just to give birth to a ridiculous mouse.

As noted, this Debtor never operated any business in a commercial sense. Although it was frequently referred to as a charitable corporation, it was never intended to function as such in a true sense, and it appeared that the only object of its charity, at least during the Chapter 11, was the various attorneys who represented the Debtor. Thus, it is clear from this record that its only business was nothing but litigation in every conceivable forum fought to reach an unreachable goal, all without any success, and its ongoing fights with HUD relating to its attempt to force HUD to sell an apartment complex to the Debtor all of which were nothing but attempts to tilt a windmill. But, unlike Don Quixote

who pursued a noble goal, the goal pursued by this Debtor was less than noble and as time went on became obvious to all it was nothing more than sheer exercise in futility.

This is the historical background of this dismissed Chapter 11 case which leads to consideration of the various fee applications filed by professionals. It should be stated at the outset that if the allowances to professionals would be governed by and dependent upon results produced by them, none of the applicants would be entitled to any compensation. However, it would be grossly unfair and inequitable to permit this Debtor to escape the responsibility to pay the several professionals who toiled on behalf of and at the request of the Debtor. Thus, while this Court is not willing to limit the right of those professionals to an allowance to the result produced, this does not mean that the lack of success which is so patent in this particular instance, the total failure to produce the result sought to be achieved, i.e., the purchase by the Debtor of the apartment complex known as Mandalay Shores Apartments is not a proper factor to be taken into consideration in making the determination of the amounts to be awarded.

The right of professionals to any award was challenged in this case by the Debtor itself who, as noted, utilized the services of a half-dozen attorneys over the years. It is also challenged by attorneys for the State Court receiver appointed for the Debtor prior to the commencement of this Chapter 11 case by the Circuit Court for the 6th Judicial Circuit in and for Pinellas County. These objections were considered by this Court, and by a separate order were overruled, the Court having concluded that the Order of Dismissal did not divest this Court of jurisdiction to make the awards and did not prevent this Court from considering the various applications on file which are the following:

## APPLICATION OF THE LAW FIRM OF KROOTH & ALTMAN

The law firm of Krooth and Altman was retained by the Debtor on August 8, 1980, although the Order Authorizing a retention was not obtained by the Debtor until June 3, 1981. The law firm located in Washington, D.C., was retained by the Debtor to represent the Debtor in its long, drawn out albeit totally unsuccessful fight with HUD in a vain attempt to compel HUD to sell the apartment complex mentioned earlier to the Debtor. The law firm of Krooth and Altman seeks an allowance in a total amount of $187,245 which includes a charge for the services rendered by the law firm prior to the entry of the Order of Retention. The total allowance sought represents services rendered by the law firm and claims to have consumed 1,914.40 hours. In addition, the law firm seeks a reimbursement of out-of-pocket expenses in the amount of $16,630.95.

Mr. Altman of the law firm initially filed the suit in the District Court for the Middle District of Florida, Case No. 80–356–CIV–T–H. This suit was filed against HUD but without success and it was dismissed. The Debtor filed a Notice of Appeal which was initially argued before the 5th Circuit and later before the 11th Circuit Court of Appeals, again without success. In addition to Mr. Altman, the Debtor was also represented by local counsel in this litigation. Not being satisfied with the adverse result in the District Court and also with the adverse result in the Court of Appeals, Mr. Altman also filed a Petition for Certiorari in the Supreme Court of the United States, but again without success, and the Petition for Certiorari was dismissed without a hearing. As noted, the law firm also billed the Debtor for prepetition services, claiming a balance due for those services of $29,015.14 which includes the unreimbursed expenses. The compensation sought by the law firm appears to represent a balanced hourly rate of $97.80. Mr. Altman was also active in other matters pertaining to the Debtor's futile attempt to purchase the apartment house complex which was really the only purpose of forming the association of the Debtor. Taking into consideration the entire history of this

case, most notably the value of the services and the results produced and the benefit conferred on the entire estate, this Court is of the considered opinion that the law firm of Krooth & Altman is entitled to a compensation for its services of $100,000.

### APPLICATION OF THE LAW FIRM OF O'CONNOR & HANNON

■ During the same time the law firm of Krooth & Altman fought in vain the fight of the Debtor in the courts, the Debtor also retained the services of the Washington, D.C., law firm of O'Connor & Hannon, a law firm who is supposed to have had the necessary connection with the administrative agencies involved which connection was supposed to have assured success and produce the ultimate results sought, that is an ability of the Debtor to purchase the apartment house complex from HUD. This law firm, O'Connor & Hannon, located in several cities including offices in Washington, D.C., was retained by the Debtor as special counsel with permission of this Court by an Order entered on February 4, 1982. This law firm was retained for the primary purpose, as noted, to represent the Debtor before HUD in order to assist the Debtor to persuade HUD to sell the apartment house complex to the Debtor. Just like the efforts of Mr. Altman in the courts, as noted earlier, the efforts of this law firm before HUD were wholly without success. The representation was basically conferences with representatives of HUD and none of the services involved any litigation. The law firm claimed to have expended a total of 221.51 hours of partner time at the hourly rate of $200, 11.25 hours at the hourly rate of $150, and 8.50 hours at the hourly rate of $125, for a total of 270 hours between February 1, 1982, and September 30, 1985. The law firm seeks compensation in the total amount of $49,675, together with reimbursement for expenses in the amount of $1,776.67. The vast majority of the services involved inter-office conferences and telephone conferences with Mr. Burr, one of the principals of the Debtor. The billing submitted by the law firm includes a charge of $300 for filing a pleading with the Clerk of the Bankruptcy Court. Several items allowed for expenses include items of general overhead expenses such as postage, photocopying and word processing. This Court is satisfied, based on the foregoing, that a reasonable compensation to be allowed to the law firm of O'Connor & Hannon, is $25,000, together with an allowance for proper expenses in the amount of $1,265.31.

### APPLICATION OF THE ACCOUNTING FIRM LAVENTHOL & HORWATH

■ The Debtor, in addition to retaining the law firm of Kooth & Altman and O'Connor & Hannon in Washington, D.C., also retained the services of the national accounting firm of Laventhol & Horwath with offices also located in Washington, D.C. The retention was pursuant to an order entered by this Court on March 28, 1983. The accounting firm was retained by the Debtor in order to assist the Debtor concerning the tax exempt status of the Debtor. The services were rendered by Miss Laura Kalick who is a practicing attorney and an employee of the accounting firm. The accounting firm seeks an allowance at the rate of $120 per hour from the date of retention up to July 1, 1983, and at the rate of $135 per hour after that date. According to the application submitted, Miss Kalick claims to have spent 798.75 hours in rendering services to the Debtor for which the firm seeks an allowance. Out of this total number of hours, 129 hours were spent on travel, 60 hours on long distance telephone conversations and 95 hours on actual preparation and research. No time is recorded on the schedule submitted with the application for less than one-half hour. In the course of her representation of the Debtor, Miss Kalick made fourteen trips to Tampa, many of which were not really justified because most of the hearings attended by her involved matters other than tax problems of the Debtor, thus few of them required her presence. A large amount of time was spent by Miss Kalick on conversations with

Mr. Burr, one of the principals of the Debtor. It is true, however, that a substantial amount of her time was spent with the Internal Revenue Service. Illustrative of the nature of the services rendered by Miss Kalick is an item on which, according to her application, she spent three hours. This is the item described as the purchase of a pamphlet edition of Collier's on Bankruptcy, a service hardly compensable. The accounting firm seeks a total allowance of $95,580 and reimbursement of $9,422.55.

Considering the nature of the services rendered by the accounting firm of Laventhol & Horwath, the benefits produced by the services and the nature of the case in general, this Court is satisfied that the accounting firm of Laventhol & Horwath shall be allowed a fee of $40,000, together with the sum of $9,422.55 for expense reimbursement.

## APPLICATION OF JAWDET I. RUBAII

■ The original petition for relief in this Court was filed by the law firm of Stichter & Riedel, a law firm which does not seek an allowance in this case. Shortly after the petition was filed, the law firm withdrew, and from that point on, the Debtor was primarily represented by Mr. Jawdet Rubaii, a sole practitioner. He was the lead counsel for the Debtor in the entire proceeding for approximately 3½ years, that is, until April 10, 1984. Mr. Rubaii claimed to have spent 1,589.80 hours representing the Debtor and seeks as allowance for these services $119,235 based on a $75 per hour rate. The application of Mr. Rubaii indicates that he is seeking an allowance for his services rendered from April 1, 1981, to the Debtor and to the debtor-in-possession even though he was not authorized to represent the debtor-in-possession until June 26, 1981, when the Order Authorizing Retention was entered. According to the schedules submitted by Mr. Rubaii, he spent 236.15 hours prior to the authorization representing the debtor-in-possession. The time spent by Mr. Rubaii includes almost 50 hours spent on telephone conversations with Mr. Altman. Of course,

Mr. Altman is also charged for the time spent on the same the conversation. The schedule also reveals 250 unspecified miscellaneous hours allegedly spent by Mr. Rubaii.

Based on the foregoing, this Court is satisfied that a reasonable compensation of Mr. Rubaii shall not be more than $75,000, and Mr. Rubaii shall also be authorized to be paid reimbursement for his expenses in the amount of $1,627 less the $1,000 retainer he received.

## APPLICATION OF WILLIAM O'MALLEY

■ While Mr. Rubaii was representing the Debtor locally and generally, and while Mr. Altman, Mr. O'Connor and Miss Kalick represented the Debtor on specific matters, the Debtor also retained the services of Mr. William O'Malley for the purpose of representing the Debtor-in-Possession as general counsel, although it appears that he was basically retained to represent the Debtor in connection with the Debtor's futile attempt to purchase another apartment house complex known as Tanglewood. Mr. O'Malley was retained on May 21, 1982, and claimed to have spent 539 hours representing the Debtor. Mr. O'Malley seeks an allowance of $53,905 representing a charge of an hourly rate of $100. Mr. O'Malley does not seek reimbursement for expenses. Mr. O'Malley did appear in this Court repeatedly, together with other counsel. Although his appearance did not involve any litigation in this Court but appeared to be mostly general appearance, he might have rendered legal services to the Debtor in connection with the Tanglewood project, a project listed earlier which also never came to fruition, and none of his efforts produced any results. In any event, considering the nature of the services, the benefit conferred on the Debtor and the result produced, this Court is satisfied that Mr. O'Malley should not be awarded the amount sought, and the reasonable value of his services is $20,000.

## APPLICATION OF CHARLES MEDEARIS

■ Shortly after the time Mr. O'Malley was engaged, Mr. Medearis was also retained by the Debtor. The Order of Retention was entered November 15, 1983. Mr. Medearis seeks an allowance of $67,290 which represents an hourly rate of $120 for the time spent, according to the application, of 677.09 hours. The representation of the Debtor by Mr. Medearis was basically general appearance in Court involving no actual litigation, but again, revolved around the futile attempts together with Mr. O'Malley to proceed towards a successful reorganization which never materialized. Considering the totality of this case, the nature of the services rendered, the results produced and the benefits conferred on the estate, it is the considered opinion of this Court that an allowance to Mr. Medearis shall not be more than $25,000. Mr. Medearis is also entitled to recover his unreimbursed expenses of $765.13.

■ In addition, Mr. George Blume seeks an allowance of $5,400. Mr. Blume purportedly represented the Creditors' Committee, a Committee which was totally conspicuous by their absence in this particular case. As a matter of fact, it was really a surprise to this Court to find out that Mr. Blume was in fact retained as counsel for the Creditors' Committee. Mr. Blume claimed to have spent 54.5 hours rendering services to the Creditors' Committee. This Court having considered the application of Mr. Blume is satisfied that he shall not be allowed more than $2,500 for his services.

These are the applications for allowance filed by the various attorneys who were at one time or another representing the Debtor in this case. There are six attorneys who claim to have spent a total of 6,100 hours during a four-year time period representing approximately 1,500 hours per year, or to break this number down further would represent almost an uninterrupted forty-hour week for four years devoted by these attorneys to the affairs of this Debtor, a proposition hardly acceptable and believable. The total fees sought by the various counsel is $572,930.00. Considering the amount sought and the services rendered it should be obvious that the allowances sought are grossly excessive. For this reason, this Court is satisfied that the readjustment of the amounts allowed is proper under the circumstances.

■ Prior to the commencement of this Chapter 11 case, there was a receivership proceeding in the state court, and the Circuit Court of Pinellas County appointed Mr. Clyde Renfrew as Receiver, and the law firms of Case, Kimpton and Straske, Farfante, as counsel and co-counsel, respectively, for the Receiver. Mr. Renfrew seeks an allowance of $3,570 for the services rendered to the estate. The law firm of Case, Kimpton seeks an allowance of $17,571, and the law firm of Straske, Farfante does not seek any allowance at all. The Court considered the matter and is satisfied that the charge of Mr. Renfrew in the amount of $3,570 is proper and should be allowed. However, the application for allowance of the law firm of Case, Kimpton is grossly excessive and shall not be more than $10,000. This law firm shall also be entitled to a reimbursement of its expenses of $2,186.74.

Based on the foregoing, it is

ORDERED, ADJUDGED and DECREED that the fee applications be, and the same are hereby granted and allowed as fees and compensation as set forth below. It is further

ORDERED, ADJUDGED and DECREED that the amounts stated below shall be paid by the Debtor within ten (10) days of the entry of this order.

| | Compensation | Expenses |
|---|---|---|
| Krooth & Altman | $100,000.00 | |
| O'Connor & Hannon | 25,000.00 | $1,265.31 |
| Laventhol & Horwath | 40,000.00 | 9,422.55 |
| Jawdet I. Rubaii | 75,000.00 | 1,627.00 |
| | | (less $1,000 retainer) |
| William O'Malley | 20,000.00 | |
| Charles Medearis | 25,000.00 | 765.13 |
| George Blume | 2,500.00 | |
| Clyde Renfrew | 3,570.00 | |
| Case, Kimpton | 10,000.00 | $2,186.74 |
| Straske, Farfante | No Application Submitted | |