**In re 1 POTATO 2, INC., Debtor.**

**Bankruptcy No. 4–85–2435.**

United States Bankruptcy Court,
D. Minnesota.

March 20, 1987.

Samuel Stern of Stern, Levine, Lifson & Strauss, P.A., St. Louis Park, Minn., for Michael Lawrence.

Thomas E. Hoffman of Fredrikson & Byron, P.A., Minneapolis, Minn., for debtor.

## ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter came on before me on February 24, 1987, on the motion of Michael Lawrence and Stern, Levine, Lifson & Strauss, P.A. for payment of attorneys fees and costs pursuant to 11 U.S.C. § 503(b)(3)(D) and (4).[1] This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334, § 157(b)(1) and Local Rule 103(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

Michael Lawrence (Lawrence) is an equity security holder of 1 Potato 2, Inc. (debtor). He owns 2000 shares of stock which were purchased on July 24, 1986. Debtor's bankruptcy petition was filed on November 15, 1985. On October 22, 1986, I confirmed a plan of reorganization of the debtor, of which Lawrence was not a part.

Lawrence approached the debtor in May 1986 about possibly injecting capital into the debtor and being a part of the reorganization effort or taking control of the debtor. The debtor rejected Lawrence's proposals for reasons not established conclusively by the evidence. The reasons are not important to this discussion in any event.

Lawrence then approached a competing investor group (the Brown group) and the debtor's major secured creditor (First Bank) about the possibilities of obtaining part or all of the debtor corporation through participation in their negotiations with debtor. Numerous and detailed discussions then ensued among the parties. Lawrence also contacted the unsecured creditors' committee to attempt to enlist its help in taking over the debtor.

Eventually negotiations between First Bank and the Brown group "froze out" Lawrence. The Brown group reached an agreement with First Bank and the debtor which resulted in the confirmed plan of reorganization.

Lawrence continued to attempt to obtain control of the debtor. Through his counsel, he objected to the disclosure statement and plan of reorganization of the debtor. Lawrence also filed, too late for consideration, a competing plan of reorganization.

The affidavits of Lawrence and Mark DuVal, one of the attorneys for the unsecured creditors' committee, state that Lawrence's actions in attempting to obtain control of the debtor increased the unsecured creditors final share in the plan of reorganization. The affidavit of debtor's chief financial officer stated that Lawrence's activities increased the administrative costs of the plan due to increased attorneys fees of approximately $30,000 and management time spent dealing with Lawrence.

Lawrence's attorneys, Stern, Levine, Lifson & Strauss, P.A., seek payment of $17,646.50 in fees and $1,260.33 in costs for

---

1. The matter was submitted on the basis of the verified motion papers and affidavits of Michael Lawrence, Samuel Stern, Ken Wolf, Mark DuVal and Thomas Leiser. The time records of the Stern firm were also considered. The parties also agreed as to the number of shares of debtor's stock owned by Lawrence and the date he acquired the shares in correspondence to the court after the hearing.

attorneys time from June 20, 1986 through September 16, 1986. The billing does not include charges for drafting of Lawrence's own reorganization plan.

### Issues

1. Must Lawrence have been an equity security holder at any particular time in the case to allow administrative expense status under 11 U.S.C. § 503(b)(3)(D)?

2. Did Lawrence make a "substantial contribution" in debtor's case under 11 U.S.C. § 503(b)(3)(D)?

3. Is the compensation requested by Lawrence's attorneys "reasonable" as required by 11 U.S.C. § 503(b)(4)?

### Memorandum

Lawrence and the Stern, Levin, Lifson & Strauss, P.A. law firm request payment by debtor of attorneys fee charges and expenses under 11 U.S.C. § 503(b)(4).[2] This request raises the issues listed above. If I find against Lawrence on any issue, I need not reach the following issue or issues.

#### 1.

Mr. Lawrence became a shareholder in 1 Potato 2, Inc. on July 24, 1986. This was a postpetition acquisition. 11 U.S.C. § 503(b)(3)(D) does not state when a shareholder must have acquired his interest to meet the requirements of the statute. The entities listed in 11 U.S.C. § 503(b)(3)(D) are "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders." None of these entities are parties who could only exist prepetition. Therefore the language of the statute itself would not preclude a postpetition shareholder from recovery.

Lawrence, in order to be heard as to any issue in the debtor's case and in order to file a proposed plan of reorganization had to become a shareholder since he was not a creditor, indenture trustee or committee member. 11 U.S.C. § 1109(b) and § 1121(c). *See In re Frog and Peach, Ltd.*, 38 B.R. 307 (Bktcy.N.D.Ga.1984) (Fees of unsuccessful purchaser of debtor's property who was not a creditor, equity security holder or indenture trustee were not reimbursable under 11 U.S.C. § 503(b).)

[1] Lawrence acquired his stock on July 24, 1986, after a considerable amount of time had already been invested in the case by his lawyers. I do not believe that the time expended by any party listed in 11 U.S.C. § 503(b)(3)(D) or his or her counsel prior to becoming a party listed in 11 U.S.C. § 503(b)(3)(D) should be compensated. The statute clearly defines those to be compensated. A person who does not meet the requirements of the statute should not receive compensation *nunc pro tunc*. A nonshareholder, or noncreditor, nontrustee or noncommittee member should have no expectation of recovery under 11 U.S.C. § 503(b)(3)(D). Therefore, only time from July 24, 1986 shall be considered in the discussion below.

#### 2.

The next issue is whether Lawrence made a "substantial contribution" in debtor's case. 11 U.S.C. § 503(b)(3)(D). *In re Richton International Corporation*, 15 B.R. 854, 856 (Bktcy.S.D.N.Y.1981) stated

---

**2.** § 503. Allowance of administrative expenses.

\* \* \* \* \* \*

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

\* \* \* \* \* \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\* \* \* \* \* \*

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under sec-

tion 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; ...

\* \* \* \* \* \*

(4) reasonable compensation for professional services rendered by an attorney or an accountant or an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

that such a contribution is one of services "which foster and enhance, rather than retard or interrupt the progress of reorganization." In order to recover attorneys fees under § 503(b)(4) the contribution does not have to culminate in a plan confirmation but it must result in tangible benefits to the estate. *Matter of Patch Graphics,* 58 B.R. 743, 746 (Bktcy.W.D.Wisc.1986). Since the statute says "substantial", the tangible benefits must be considerable in amount, value or worth.

■ The burden of proof as to the substantial benefit of the claimant's activities is on the claimant and the standard of proof is a preponderance of the evidence. *Id.* at 746. Priority statutes such as Section 503 are to be strictly construed. *Standard Oil Company v. Kurtz,* 330 F.2d 178, 180 (8th Cir.1964) (the court strictly construed 11 U.S.C. § 104 of Bankruptcy Act which dealt with payment priorities). In this case, Lawrence and one of the unsecured creditors committee attorneys stated that Lawrence's involvement raised the amount ultimately paid to unsecured creditors. Although this is proof of a contribution to debtor's estate it is not specific, tangible proof of any considerable benefit bestowed. The debtor's Chief Financial Officer stated that Lawrence's efforts increased the administrative expense amounts paid as debtors attorneys fees and secured creditor's attorneys fees. The increased fees were approximately $30,000. Management also had to expend time dealing with Lawrence. The contribution of Lawrence and the cost of his involvement to debtor's estate cannot be compared upon the facts so as to determine that Lawrence's contribution was qualitatively substantial.[3] Since the required proof under 11 U.S.C. § 503(b)(3)(D) was not made, it is not necessary to consider whether Lawrence's attorneys fees are reasonable pursuant to 11 U.S.C. § 503(b)(4).

IT IS ORDERED that the application of Michael Lawrence and Stern, Levine, Lifson & Strauss, P.A. is denied.

---

3. 11 U.S.C. § 503(b)(3)(D) does not require that I find that an equity security holder have any intention that his or her actions will benefit debtor's estate, only that his actions do substantially benefit the estate. The fact that Lawrence's motives in proposing to take over the debtor were not altruistic is not relevant. *See In re Calumet Realty Company,* 34 B.R. 922, 926 (Bktcy.E.D.Pa.1983). All that matters is the value of the contribution to the estate.