**In re GARRISON LIQUORS, INC., Debtor.**

**Bankruptcy No. 87–5–0524.**

United States Bankruptcy Court, D. Maryland.

Nov. 28, 1989.

Joel I. Sher, Shapiro & Olander, Baltimore, Md., for debtor.

Brian C. Parker, Gebhardt & Smith, Baltimore, Md., for First Maryland Cheque Corp.

Samuel J. Friedman, Baltimore, Md., trustee.

MEMORANDUM OPINION DENYING APPLICATION FOR COMPENSATION OF COUNSEL TO THE DEBTOR WITH LEAVE TO AMEND

JAMES F. SCHNEIDER, Bankruptcy Judge.

An order for relief was entered by default upon an involuntary Chapter 7 bankruptcy petition filed against the corporate debtor which operated a liquor store. Thereafter, the law firm which was appointed as counsel to the debtor filed a motion to convert to Chapter 11, which the Court granted. During the pendency of the Chapter 11, the debtor's insiders wrongfully converted to their own use money orders in an amount exceeding $50,-000. The bank to which these funds be-

longed brought criminal charges against the insiders, resulting in criminal convictions. The bankruptcy court awarded the bank an administrative claim in the amount of its loss. While the Chapter 11 was pending, the debtor's landlord moved to lift the automatic stay, to which the debtor consented. Thereafter, the case was converted back to Chapter 7, and a trustee was appointed who was able to create a fund by negotiating with the landlord for a sale of the liquor license. When debtor's counsel filed a fee application, objections were raised by both the bank and the Chapter 7 trustee, presenting the following issues:

1. Whether all compensation should be denied to debtor's counsel where

   a. debtor's counsel moved to convert an involuntary Chapter 7 case to Chapter 11, although counsel knew or should have known that a successful reorganization was impossible and the case was later converted back to Chapter 7;

   b. debtor was engaged in fraudulent and/or criminal conduct during the pendency of the bankruptcy case which damaged the objecting creditor; and

   c. counsel rendered services which benefited the corporate insider and which produced no return for creditors, including the filing of a consent to relief from automatic stay, the effect of which the Chapter 7 trustee was able to reverse, enabling him to bring cash into the bankruptcy estate.

2. Whether objections to the fee application were untimely, but even so, whether the fee should be denied or reduced in the absence of timely objection because counsel's services rendered on the debtor's behalf were not beneficial to the estate.

## FINDINGS OF FACT

1. On March 13, 1987, the instant proceeding was commenced in this Court by the filing of an involuntary bankruptcy petition under Chapter 7 by three liquor suppliers against the debtor, Garrison Liquors, Inc. An order for relief under Chapter 7 [P. 9] was entered on June 3, 1987, upon the failure of the debtor to oppose it. On June 25, 1987, the debtor filed a motion to convert [P. 15] the case to a proceeding under Chapter 11 and the Court [Balick, B.J.] entered an Order [P. 16] of even date granting the relief.

2. By Order [P. 22] dated July 14, 1987, Goldstein and Sher, P.A. ["Goldstein"] was appointed counsel to the debtor in possession. On August 11, 1987, the debtor in possession filed its statement of financial affairs [P. 31]. On August 14, 1987, the debtor in possession filed a motion to extend time for the assumption or rejection of lease agreement [P. 33], which extension was granted for 60 days from August 24, 1987 by Order [P. 37].

3. On September 3, 1987, the debtor in possession, by counsel, filed a complaint [Adv. No. 87–0241B] for extension of the automatic stay in favor of the debtor's president, Herbert Hughes, and his wife Catherine Hughes, to enjoin litigation pending against them as guarantors of debts owed to various suppliers. The complaint was based upon the case of *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1986) which held that the automatic stay of Section 362(a) of the Bankruptcy Code may be extended to nondebtor guarantors of a Chapter 11 corporate debtor under certain circumstances. A hearing upon the debtor's request for a temporary restraining order was held on September 14, 1987 and the Order was entered on September 24, 1987. The temporary restraining order was continued by consent by Order dated October 20, 1987.

4. On October 22, 1987, First Maryland Cheque Corporation ["First Maryland"] filed an application for allowance of administrative expense [P. 40], in which it alleged that the debtor in possession had converted to its own use the proceeds from money orders totalling $50,304.72, which was the property of First Maryland in addition to unpaid fees in the amount of $120.75. Simultaneously, First Maryland Cheque Corporation also filed a motion to convert [P. 41] the proceedings to Chapter 7. Later the same day, October 22, 1987, the debtor in possession filed a motion to as-

sume executory lease [P. 42]. On November 4, 1987, the lessor filed a response [P. 44] which disputed the debtor's representations that it was current on payment of rent and which demanded that the payment of rent be a condition for the assumption of the lease by the debtor in possession.

5. On November 11, 1987, the debtor in possession filed an objection [P. 47] to the notice of First Maryland Cheque Corporation for administrative claim and stated that debtor's counsel had not received a copy of the application, although a certificate of service to the contrary was filed with the application. On December 7, 1987, the debtor in possession filed an answer [P. 48] to the motion to convert, in which it denied the material allegations raised. On the same day, an Order was entered in Motion No. M87–1157B lifting the automatic stay by consent as to William L. Adams, the debtor's landlord.

6. Various matters were scheduled to be heard in open court on January 6, 1988, but on December 30, 1987, First Maryland Cheque Corporation and the debtor filed a joint motion to continue the hearing on First Maryland's administrative claim [P. 53]. On January 5, 1988, the debtor filed a motion to continue [P. 54] the hearing on the motion to assume lease.

7. On January 11, 1988, by consent of the debtor and First Maryland, the instant case was converted to a proceeding under Chapter 7 by Order [Derby, B.J.] [P. 56]. On March 1, 1988, Samuel J. Friedman was appointed Chapter 7 trustee ["trustee"] and on March 10, 1988, he was also appointed attorney to represent himself as trustee by Order [P. 66]. On March 23, 1988, the trustee filed a notice of private sale [P. 69] of the debtor's business, including the liquor license, to one George A. Brown, for $45,000.

8. On October 3, 1988, the instant fee application [P. 76] was filed by Gary A. Goldstein, Robert A. Gordon and the law firm of Goldstein and Sher, counsel to the debtor, which requested compensation in the amount of $12,627 (less $2,000 previously paid as a retainer) and $357.12 in costs. A number of exhibits were attached to the application, including computer-printed time records. A certificate of service appended to the application indicated that a copy of the application was mailed to the U.S. Trustee. A notice [P. 77] was also filed on October 3, 1988 advised creditors of a 20–day period for filing objections to the fee. A separate certificate of mailing [P. 78] signed by Robert A. Gordon certified that the notice was mailed "to all Estate Creditors as listed on the matrix of the Debtor" on September 30, 1988. No objections were filed within the 20–day period.

9. On January 10, 1989, a hearing was held upon the application of First Maryland Cheque Corporation for allowance of administrative claim. The Court was apprised that Herbert Hughes and Robert Hughes, the debtor's principals, had both been indicted for the conversion of proceeds of money orders belonging to First Maryland. The Court granted the application of First Maryland by Order [P. 83] dated February 13, 1989.

10. On February 16, 1989, Goldstein and Sher, P.A., filed a motion [P. 84] for the passage of an order approving its fee application, noting that no objection had been filed although more than 20 days had passed since the filing of the notice. On February 17, 1989, First Maryland filed an opposition [P. 85] to the motion and on February 21, 1989, an objection [P. 86] to the fee application. Respectively on February 21 and 23, 1987, the trustee filed an answer [P. 87] to the motion and an objection [P. 89] to the fee application of Goldstein and Sher, P.A.

11. A hearing was held on March 20, 1989, at which time the Court entertained arguments of counsel. It is First Maryland's position that as a Chapter 11 proceeding, this case was hopeless from the beginning and that debtor's counsel should have known it. It claims that the debtor was unable to meet its day-to-day operating expenses and that it was only by wrongfully converting First Maryland's cheques that the debtor was able to pay suppliers and utilities. The business had assets of $52,000 according to the schedules, and they had been pledged to a secured creditor

as collateral for a $162,000 debt. The debtor's consent to the lifting of the automatic stay in favor of that creditor doomed the case to liquidation, and counsel should not be rewarded for their part in producing this result. Any fee paid to debtor's counsel will dilute First Maryland's administrative claim arising from the conversion of its cheques by the debtor's insiders.

12. The trustee echoes the concerns of First Maryland and states that because he had to undo what Goldstein did in order to collect the only funds the estate possesses, it would be unjust to reward the law firm for its poor representation. He contends that the landlord's security interest was clearly a preference that should have been avoided by the debtor. Mr. Friedman states that debtor's counsel could have produced the same beneficial result which he produced for the estate and that their failure to do so should preclude them from receiving *any* compensation.

DISCUSSION

■ Despite its commiseration with the bank and the trustee, the Court will nevertheless overrule their objections, for a number of reasons. First, there has been no proof tendered to show that the law firm was aware of the criminal activity perpetrated by debtor's insiders. In the absence of any evidence on this issue, there is no basis upon which to impute guilty knowledge to counsel. Second, counsel who undertake to represent debtors cannot be required to predict the ultimate outcome of a Chapter 11 reorganization. Indeed, whether they are to be compensated cannot be based upon the success of the reorganization. Such a test would require debtor's counsel to also be debtor's guarantors. It would impose an impossible burden upon lawyers. Because some risk of failure is inherent in every Chapter 11 case, such a rule would preclude the filing of many potentially-successful reorganizations. This would not merely chill the enthusiasm for debtors' representation but would prejudice the bankruptcy system itself by promoting the filing of liquidation cases rather than reorganizations.

The performance of debtor's counsel must always be judged after the fact. Nevertheless, the Court must judge the nature of the services and the necessity for them as of the time the work was performed. The test for rendering such a decision is whether counsel exercised their best judgment in performing the services.

According to this standard, the Court is unable to condemn counsel for sponsoring the debtor's conversion to Chapter 11. The presence of too many variable factors preclude a finding that the debtor's reorganization was hopeless. Likewise, with respect to the filing of the consent to the motion to lift stay, the Court finds that the record is not so clear as to justify the objectors' criticism of counsel. Given the fact that counsel represented the debtor in litigation against its lessor with whom peaceful coexistence was believed to be a necessity, the trustee's argument falls flat. The trustee dealt with the landlord from a position of strength in Chapter 7 which the Chapter 11 debtor did not enjoy. The trustee accomplished his excellent results because of his own native ability and his prestige as a court officer clothed with the authority of the bankruptcy court. However, not even the trustee's excellent services were sufficient to restore the debtor to a viable business and it was sold. It simply begs the question to argue that counsel should have acted differently or performed better. The Court notes that debtor's counsel, as well as the trustee, are experienced and capable attorneys. It is pure conjecture to say that either would have acted differently if their roles were reversed.

■ The objectors claim that everything counsel did was done for the sole protection of the debtor's insiders. The Court is unable to agree. The fact that some services provided by the law firm conferred an incidental benefit upon the corporate insiders is not a sufficient basis to deny counsel compensation so long as the actual services conferred a direct benefit upon the debtor and appeared to be reasonable and necessary at the time they were performed.

The extension of the automatic stay to Mr. and Mrs. Hughes was directly beneficial to the debtor in at least two ways: (1) the debtor was spared by the action of this Court from having its principals diverted from the concerns of its reorganization; and (2) the debtor was insulated from having to pay the demands of its guarantors plus interest resulting from judgments obtained against them by its suppliers. Obviously, the insiders received a benefit as well. However, where as here the interests of the debtor and its insiders converge, the Court looks askance at charges that counsel performed services on behalf of the insiders rather than the debtor. This is particularly true in the instant case where the debtor as a close corporation is practically indistinguishable from its principals.

■■■ The Court will not reach the issue of whether the objections were timely filed. In ruling on fee applications, the Court should be in possession of all the facts, whether apparent from the record or raised untimely by an objector. This is because the bankruptcy court is required to determine the amount of fees to be paid, regardless of whether an objection is filed. Accordingly, the Court may even consider the grounds raised in an untimely objection because the Court has inherent power to raise the same grounds itself. In the instant case, the Court is overruling the objections on the specific grounds raised. However, the fee will not be allowed at this time because of the legally deficient fee application and supporting documentation, particularly the time records.

## CONCLUSIONS OF LAW

■■■ 1. Regardless of the filing of objections, the applicant bears the burden of showing the reasonableness of the fee request. *In re Morgan*, 48 B.R. 148, 149 (Bankr.D.Md.1985). The Court is unable to approve the $12,627 fee claimed in this case in the absence of more precise time entries and a fee application which addresses the 12 factors required by the Fourth Circuit U.S. Court of Appeals in *Harman v. Levin*, 772 F.2d 1150 (4th Cir.1985). The 12 factors are: "(1) the time and labor expend-

ed; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees [sic] awards in similar cases." *Id.* at 1152.

2. The fee application and time records submitted by counsel are legally deficient according to standards previously laid down by this Court in the cases of *In re Leonard Jed Co.*, 103 B.R. 706 (Bankr.D. Md.1989) and *In re Constant Care Community Health Care, Inc.*, 103 B.R. 110 (Bankr.D.Md.1989) decided respectively on July 7, 1989 and July 18, 1989. In addition, counsel in the instant case was also counsel in the case of *In re Incor*, Case No. 87–5–1292, to whom this Court denied compensation in an unreported opinion dated August 30, 1989 *on the same grounds set forth here*, to wit:

The application fails to identify the attorneys from Goldstein & Sher in addition to Mr. Sher who were assigned to the case, their hourly rates and their experience so that the Court may judge whether the case was economically staffed. The application does not disclose the hourly rates charged.

■■■ The application seeks reimbursement for out of pocket expenses in the amount of $357.12, but fails to set forth an itemized list describing the nature of the expenses in detail. The Court has had to resort to counsel's time records in order to determine what the expenses represent. Some of them appear to be noncompensable overhead, including postage, messenger services, facsimile transmissions and telephone calls. In order for such expenses to be compensable, they would have to be extraordinary and represent some vital ne-

cessity to the estate. In any event, *expenses must be disclosed in the application.*

The time records submitted in support of the application are deficient because they fail to disclose the nature of services performed, and in fact are indecipherable. They fail to disclose the name of the attorney and what services were performed. At the same time, the application fails to specify the dates when various services were performed, the number of hours required and by whom they were performed. The Court needs such information to make an informed judgment as to whether the time and labor expended by counsel were reasonable.

Counsel will be afforded the opportunity to correct the various problems outlined in this opinion by submitting a revised fee application within 60 days.

ORDER ACCORDINGLY.