**In re JAMES CONTRACTING GROUP, INC., Debtor.**

**Bankruptcy No. 589–2043.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 12, 1990.

Marc P. Gertz, Akron, Ohio, Trustee.

Harold A. Corzin, Akron, Ohio, for debtor.

Dean P. Wyman, Staff Atty., U.S. Dept. of Justice, Office of U.S. Trustee, Cleveland, Ohio.

## ORDER RE: ALLOWANCE OF ATTORNEY FEES

HAROLD F. WHITE, Bankruptcy Judge.

On November 9, 1989, Debtor, James Contracting Group, Inc., filed a voluntary proceeding under Chapter 11 of the Bankruptcy Code. Thereafter, Attorney for the Debtor, Harold A. Corzin (hereinafter "Corzin"), moved on behalf of the debtor-in-possession to employ Corzin as attorney in these proceedings. Notice of this motion was given to the U.S. Trustee. After receiving no comments from the U.S. Trustee, this court authorized the debtor-in-possession to employ Corzin as its counsel. This order was granted subject to the provisions of 11 U.S.C. § 328(a) and (b), § 330 and Bankruptcy Rule 2016(a).

On January 19, 1990, Corzin, as counsel for the debtor and debtor-in-possession, filed his first application for interim attorney fees, as provided for by law, with notice to the U.S. Trustee. He requested $3,664.70 in legal fees and $75.74 in expenses. Notice of the application was given to the U.S. Trustee. In his application, Corzin indicated that prior to the filing of these proceedings, debtor paid him a $7,000.00 retainer which was deposited into a "client's account." The U.S. Trustee objected to this application on the grounds that it was filed prematurely and that Corzin had billed for filing services which the U.S. Trustee deemed to be uncompensable overhead. Corzin responded and moved to shorten the time to file his fee application. After considering the motion, on March 26, 1990, this court approved legal fees of $3,560.70 and expenses of $75.74. The court authorized immediate payment of $2,727.33 and deferred payment of the $909.11 balance. The court disallowed $104.00 in fees.

On May 24, 1990, Corzin filed a second application for interim attorney's fees. Corzin requested payment of his total bill to date, in the amount of $3,452.71. Corzin

indicated in his application that out of the $7,000.00 retainer received by him, after the $2,727.33 payment, there would be a balance of $4,272.67 in the client account. On July 17, 1990, this court approved fees in the amount of $1,219.80, making the total fees paid to date in the amount of $3,947.13.

On July 16, 1990, Corzin filed a final fee application requesting the balance of his legal fees and expenses in the amount of $2,794.15. Notice of the fee application was given to the U.S. Trustee. Thereafter, on July 27, 1990, Corzin filed an amended final application requesting legal fees and expenses in the amount of $3,504.81. Notice of this application was given to the U.S. Trustee.

On August 6, 1990, the U.S. Trustee filed comments to Corzin's amended final application, questioning whether or not Corzin's services provided a benefit to the estate, since the debtor had failed to reorganize and had incurred postpetition liabilities.

On August 3, 1990, this case was converted to a case under Chapter 7. On August 13, 1990, Attorney Marc P. Gertz (hereinafter "Gertz") was appointed Interim Trustee. On August 17, 1990, Gertz filed an application to retain himself as attorney in these proceedings.

This matter came on for hearing on August 17, 1990. However, due to no fault of his own, Corzin failed to appear. During the hearing, the U.S. Trustee stated that he objected to the final fee application because this was an unsuccessful Chapter 11 reorganization. This matter was then adjourned to September 7, 1990, in order to give Corzin an opportunity to be heard.

On September 5, 1990, Gertz, as Trustee, filed comments to the amended final fee application wherein he opined that the U.S. Trustee's objections were not well-founded since there was no evidence of fraud or negligence attributable to Corzin. Gertz further opined that an attorney should never be penalized solely because of a failed reorganization.

Corzin appeared at the adjourned meeting on September 7, 1990. At that hearing, the U.S. Trustee reiterated his objection to the fee application and asserted that Corzin's fees should be decreased by 50 percent because this was an unsuccessful Chapter 11 reorganization, with postpeti-.tion liabilities. However, the U.S. Trustee has not alleged negligence or wrongdoing imputable to Corzin, nor is there any dispute as to Corzin's hourly rate or to the actual services rendered.

The record shows that all of debtor's taxes are current; and that while in Chapter 11, debtor successfully solicited and obtained contracts to perform work. However, debtor's economic demise was precipitated when two developers for whom debtor performed work failed to pay, leaving debtor with approximately $158,000 in accounts receivable. One developer ran out of funds and the other became engaged in a dispute with debtor. Debtor has approximately $120,000 in accounts payable on these two jobs and the job sites have been liened for over $110,000. There is $3,052.87 remaining in the D.I.P. account.

The court has reviewed Corzin's amended final fee application and concludes that 1.45 hours, or $188.50, is fee related and as such is uncompensable. Therefore, the court disallows $188.50 and concludes that Corzin should be allowed $3,316.31 on his final fee application, for total legal fees and expenses of $7,263.44, except for consideration of the U.S. Trustee's objection.

## ISSUES

Under what circumstances is an attorney's retainer considered to be an asset of the bankruptcy estate? Whether the allowance of attorney's fees to the attorney for the debtor-in-possession should be automatically reduced because of the failure of a Chapter 11 reorganization?

## DISCUSSION OF LAW

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a proceeding to determine the allowance of attorney's fees and thus "arises in" the bankruptcy case pursuant to 28 U.S.C. § 157(a).

At the outset, this court notes that Corzin received a prepetition retainer which he deposited into a "client account" and from which he has drawn payment upon court approval of his billings. Although it was not raised as an issue by either of the parties, this court must first determine whether or not such a prepetition retainer is an estate asset. Pursuant to 11 U.S.C. § 541(a)(1), an estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Therefore, a prepetition retainer becomes property of the estate only if the court determines that the debtor had an interest in the retainer at the time of filing.

This determination is important; because if a retainer is not an asset of the estate, then it is not subject to the fee application proceedings found in 11 U.S.C. § 330 and § 331, and Bankruptcy Rules 2016(a) and 2002(a)(7). See *In re McDonald Bros. Const., Inc.*, 114 B.R. 989 (Bankr.N.D.Ill. 1990). If Corzin's retainer is not of the type considered to be an estate asset, then this court would not be concerned with it other than to subject it to scrutiny pursuant to 11 U.S.C. § 329. *Id.* at 995. That bankruptcy code section requires counsel to file with the court a statement of all compensation paid or agreed to be paid if such payment was made after one year before the date of the filing of the petition. A court may then require a refund of any compensation which exceeds the reasonable value of the attorney's services rendered to the estate. It follows that if Corzin's retainer is not of the type that is considered to be an estate asset, then this court would not have the authority to require Corzin to surrender a portion of it to the estate, by disallowing fees as the U.S. Trustee has requested.

There are three types of retainers, two of which are not considered to be estate assets. A "classic retainer" is one which is given to an attorney to secure that attorney's availability for a given period of time and is payment for merely accepting a case, whether or not any services are actually performed. A client retains no interest in these funds; therefore, a classic retainer does not become an asset of the estate. See *McDonald*, 114 B.R. 989 at 998.

The second type of retainer which does not become an asset of the estate is an "advance payment retainer." *McDonald*, 114 B.R. 989 at 1000. In this type of retainer agreement, the attorney agrees to render certain services for which the client agrees to pay in advance. Ownership of the retainer passes to the attorney at the time of payment and the client retains no interest in the funds. *Id.* at 1000. Therefore, as with the classic retainer, an advance payment retainer does not become a part of a debtor's estate. *Id.* at 1000–1002.

The third type of retainer is a "security retainer," i.e., a retainer which is held by an attorney to secure payment of fees for future services. This is the typical retainer encountered in Chapter 11 cases. *Id.* at 999 and 1002. The debtor maintains an interest in the retainer until the funds are applied to charges for services actually rendered. *Id.* at 999. Thus, until they are applied for services actually rendered, the funds in a security retainer remain an asset of the estate. As such, they are subject to the fee application process under 11 U.S.C. § 330.

It is a question of state law as to whether or not a retainer agreement will be enforced. *McDonald*, 114 B.R. 989 at 996. In Ohio, classic retainers have been acknowledged and enforced. See *Jacobs v. Holston* (1980), 70 Ohio App.2d 55, 434 N.E.2d 738. A survey of Ohio law reveals no cases which discuss or approve the usage of either advance payment retainers or security retainers. However, the court notes that security retainers, which create a trust in favor of the debtor, present no grounds for nonenforcement; and in Ohio, the general rule is that contracts for attorney's fees will be enforced absent a showing of fraud or overreaching. See *McDonald*, 114 B.R. 989 at 999 and *Jacobs*, 70 Ohio App.2d 55 at 59, 434 N.E.2d 738.

An Ohio bankruptcy court has considered the issue and has held that a prepetition retainer is an estate asset. See *Matter of K & R Min., Inc.*, 105 B.R. 394 (Bankr.N.D.

Ohio 1989). However, the court in *K & R Min., Inc.* did not identify the retainer in that case as a "security retainer" or differentiate it from other types of retainers. Nevertheless, the facts in that case clearly show that the retainer was in fact a security retainer to insure future payment of attorney's fees as awarded by the court. *Id.* at 397.

■ From a perusal of the fee applications in this case, the court has ascertained that the $7,000 retainer was a security retainer which Corzin drew against when his billings were approved by this court. Therefore, the court concludes that the retainer is an estate asset and is subject to the court's scrutiny pursuant to 11 U.S.C. § 330 and § 331.

Having satisfied itself that the retainer is subject to the court's purview, the court must now determine whether or not Corzin's fees should be reduced by 50 percent, (or some other amount), solely because of the failed Chapter 11.

■ When a fee application comes before the court, the burden of proof of the reasonableness of the fee request is on the applicant. See *Matter of Liberal Market, Inc.,* 24 B.R. 653 (Bankr.S.D.Ohio 1982); *In re Garrison Liquors, Inc.,* 108 B.R. 561 (Bankr.D.Md.1989); and *In re 1 Potato 2, Inc.,* 71 B.R. 615 (Bankr.D.Minn.1987). The standard of proof is "preponderance of the evidence." *Id.* at 618. Judicial scrutiny of the reasonableness of the fee request is ". . . of necessity, based upon hindsight, tempered with the court's subjective factual determinations of reasonableness based upon its own general experience, observations, and expertise in the area." The court must determine whether the alleged services were actually provided and necessary. See *Matter of Liberal Market,* 24 B.R. 653 at 657–658.

■ It is a well-settled legal maxim that in order for legal fees to be compensable, the legal services rendered must have benefited the estate. See *In re Sandra Cotton, Inc.,* 91 B.R. 657 (W.D.N.Y.1988); *In re Watervliet Paper Co., Inc.,* 109 B.R. 733 (Bankr.W.D.Mich.1989); *In re 1 Potato 2,*

*Inc.,* 71 B.R. 615 at 617; *In re Grabill Corp.,* 110 B.R. 356 (Bankr.N.D.Ill.1990); *Matter of Bilgutay,* 108 B.R. 333 (Bankr. M.D.Fla.1989); *In re Washington Mfg. Co.,* 101 B.R. 944 (Bankr.M.D.Tenn.1989); and *In re Marker,* 100 B.R. 569 (Bankr.N.D. Ala.1989). An attorney is not entitled to compensation if his efforts, in fact, obstructed or impeded the administration of the estate. See *Cotton,* 91 B.R. 657 at 659. Examples of services which cannot be said to have benefited the estate are where the work was performed for non-bankruptcy matters, where the services were rendered to benefit the debtor personally, or where the services were actually in opposition to the estate's administration. See *Watervliet,* 109 B.R. 733 at 735. Beneficial services are those which "foster and enhance, rather than retard or interrupt the progress of reorganization." See *In re 1 Potato 2, Inc.,* 71 B.R. 615 at 618.

■ In essence, the U.S. Trustee is arguing that Corzin's services were not beneficial to the estate because debtor's attempt to reorganize was a failure. However, the court is unconvinced that an attorney should be penalized solely for the lack of success of a Chapter 11 reorganization. To the contrary, this court is persuaded by the cogent reasoning concerning this issue found in *In re Garrison Liquors, Inc.,* 108 B.R. 561 at 564. The court in that case also was faced with a failed Chapter 11 reorganization.

... counsel who undertake to represent debtors cannot be required to predict the ultimate outcome of a Chapter 11 reorganization. Indeed, whether they are to be compensated cannot be based upon the success of the reorganization. Such a test would require debtor's counsel to also be debtor's guarantors. It would impose an impossible burden upon lawyers. Because some risk of failure is inherent in every Chapter 11 case, such a rule would preclude the filing of many potentially-successful reorganizations. This would not merely chill the enthusiasm for debtors' representation but would prejudice the bankruptcy system

itself by promoting the filing of liquidation cases rather than reorganizations.

The performance of debtor's counsel must always be judged after the fact. Nevertheless, the Court must judge the nature of the services and the necessity for them as of the time the work was performed. The test for rendering such a decision is whether counsel exercised their best judgment in performing the services. Id. at 564.

Furthermore, the legal reasoning which supports the holding that counsel should not be penalized solely for the failure of a reorganization would also apply to cases under Chapter 11 which fail to culminate in a plan confirmation. See In re 1 Potato 2, Inc., 71 B.R. 615 at 618. "In order to recover attorneys fees under § 503(b)(4) the contribution does not have to culminate in a plan confirmation but it must result in tangible benefits to the estate." (citation omitted) Id. at 618.

This court is aware that there are cases wherein a court has reduced legal fees considering the failure of the reorganization. See Liberal Market, 24 B.R. 653 at 658; In re Sayegh, 62 B.R. 601 (Bankr.S.D. Tex.1986); and In re Mandalay Shores, 62 B.R. 758 (Bankr.M.D.Fla.1986). In Sayegh, the court, without a discussion of the legal principles involved, opined that the failure of the reorganization was a major factor in reducing the fee award. Id. at 604. In Mandalay Shores, the Chapter 11 was dismissed and the court opined that it was clear from the record that debtor's "only business was nothing but litigation in every conceivable forum fought to reach an unreachable goal...." Id. at 760. In Mandalay, as in Sayegh, the court allowed counsel less fees than requested, taking into consideration the failed reorganization. See Mandalay, 62 B.R. 758 at 601.

This court concurs that a court should be able to take the success or failure of a counsel's endeavors into consideration when approving fees. A successful reorganization may support an attorney's argument that certain services were reasonable and necessary. Conversely, an unsuccessful reorganization may support an argu-

ment that the services were not reasonable or necessary. However, this court must hasten to add that a successful reorganization would never justify fees for services which were in fact unnecessary or unreasonable, nor would it serve to shield negligence or wrongdoing. Nevertheless, the court reiterates that counsel should not be penalized merely for the lack of a successful reorganization.

The Court is well aware of the uncertain world of fact and law in which the reorganization lawyer must dwell under the pressure of time and expense of moving forward ... It is a shadowy realm of incomplete facts and unformed legal issues that must be mastered quickly under manifold time pressures. What seems crystal clear and simple in hindsight ... is seldom presented as such in the heat of battle. However, in the last analysis, final fee awards necessarily must take into account all the circumstances of a particular case. In re Washington Mfg. Co., 101 B.R. 944, 956 (Bankr.M.D.Tenn.1989), citing In re Public Service Co. of New Hampshire, 86 B.R. 7, 12 (Bankr.D.N.H.1988).

The U.S. Trustee has cited In re Blue Top Family Restaurant, Inc., 110 B.R. 777 (Bankr.W.D.Pa.1990) in support of his argument that Corzin's fees should be halved. However, from a careful reading of that decision, this court concludes that that case is not supportive of the U.S. Trustee's position. In Blue Top, which involved a failed Chapter 11, the court opined that "(c)ounsel may not intentionally or negligently allow his client to use the protection of the Bankruptcy Court to incur further debt which cannot be paid." Id. at 777. The court then ordered counsel to refund a portion of his fees. However, as previously noted, there is no evidence of negligence attributable to Corzin, nor does the U.S. Trustee so assert.

Whenever it becomes obvious during a Chapter 11 that there is little or no hope of a reorganization, and the debtor's attorney negligently permits the debtor to continue to operate and incur debts to the detriment of the estate and the creditors,

then the bankruptcy court has a duty to penalize the attorney; since an attorney is an officer of the court. This appears to have been the reasoning in *Blue Top*. The attorney, as an officer of the court, has a duty to notify both the U.S. Trustee and the court whenever it becomes evident that a reorganization is unlikely to succeed. The court also realizes that with the U.S. Trustee's supervision of case administration, the debtor and debtor's attorney are required to file numerous reports which places an additional burden on the estate as well as on the attorney. An attorney for the debtor should be reimbursed for legal fees and expenses which are incurred in order to fulfill the U.S. Trustee's requirements, unless it is shown that the attorney's actions were negligent in permitting the Chapter 11 to continue to the detriment of the creditors and the estate.

Finally, upon a careful review of Corzin's final fee application, this court concludes that Corzin has met his burden of proof and has shown by a preponderance of the evidence that both the legal services rendered and the amount of $7,263.44 for total legal fees and expenses are reasonable. As was previously noted, the U.S. Trustee has not disputed the actual services rendered or Corzin's hourly rate. There is no indication of fraud, negligence or lack of judgment attributable to Corzin. Furthermore, this court concludes that the estate in fact benefited from Corzin's services, because they facilitated debtor's opportunity to reorganize. As previously discussed, the eventual failure was not imputable to Corzin; but was precipitated by parties not within this court's or Corzin's control, when two contractors for whom debtor performed services failed to pay. There was nothing at the outset of this case to suggest that debtor's attempt to reorganize would be futile.

For these reasons, this court concludes and orders that Corzin shall be allowed total legal fees and expenses in the amount of $7,263.44. This court further orders that Corzin shall be paid $3,316.31, out of the balance of the retainer in his client's account. Since the balance of the allowed final fees and expenses exceeds the

$7,000.00 retainer by $263.44, this amount is to be deferred pending liquidation of the Chapter 7 estate by the Trustee, and is to be paid according to the priority mandated by 11 U.S.C. § 507 and § 726(b).