**In the Matter of Ilhan BILGUTAY, Debtor.**

No. 86–5464–8B1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 8, 1989.

Robert Goldhagen, Tampa, Fla., for debtor.

Smith & Fuller, P.A., Tampa, Fla., Ronald E. Smith, Lakeland, Fla., former Attys. for debtor.

William Post, Seminole, Fla., for former Atty. Miguel Valdez.

## ORDER ON APPLICATION FOR ATTORNEYS FEES OF SMITH & FULLER, P.A., RON SMITH, AND MIGUEL VALDEZ

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THIS CAUSE came on to be heard upon the separate applications for attorney compensation of the law firm of Smith & Fuller, P.A., Ron Smith, and Miguel Valdez, and the objection filed by the Debtor, Ilhan Bilgutay. This Court has jurisdiction over the matter pursuant to Sections 327, 329, 330, and 503 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, and Title 28 U.S.C. § 1821 and 28 U.S.C. § 1920.

These applications for attorneys fees are not based on services rendered solely within the bankruptcy case. These attorneys were employed by the Debtor in patent litigation before the United States District Court for the Middle District of Florida. Their services are both pre-petition and post-petition, with the patent litigation having been settled post-petition with this Court's approval. The proceeds from the settlement in favor of the Debtor were placed in the registry of the Court. It is now necessary for this Court to determine the amount of attorneys fees as to each party, not only for their own sake, but also to ascertain whether there will be sufficient residual funds remaining for the Debtor to fund his Chapter 11 plan.[1]

From the outset it should be understood that notwithstanding the settlement entered into by the Debtor, the District Court's subsequent denial to reopen the patent litigation, and this Court's approval of the settlement upon the Debtor's motion, a dispute continues between the Debtor and several of his ex-counsel, who now numbers at least three in the patent case and two in the bankruptcy case. The testimony before the Court by respective counsel tends to disagree with the other's portrayal of their services.

The genesis of this protracted litigation begins with attorney Ron Smith representing the Debtor in the patent litigation. His partner at the time was Miguel Valdez, an attorney admitted to the patent Bar but not to the Bar of the State of Florida. When the case was accepted by the then firm of Smith & Valdez, a contingency fee arrangement was agreed on between the law firm and the Debtor. The evidence supports these attorneys have worked on the patent litigation. Since there is a dispute between them as to the extent of their efforts and the amount of the fees that should be divided between them, it appears appropriate to leave the split of their ultimate fees to the state court where present litigation is pending. Therefore, their fee applications will be treated solely for the purpose of determining the entire award of fees for services to the Debtor.

 At a certain point in the patent litigation very close to trial, Ron Smith contacted, among others, the firm of Smith & Fuller to assist in the Bilgutay trial. On July 25, 1986, the Debtor, Smith & Fuller, P.A., and the soon to be terminated firm of Smith & Valdez, P.A. entered into an attorney client contract for representation. The pertinent parts of this agreement state:

Client and attorneys agree that, as compensation for attorneys' services, client shall pay for attorney services as follows:

---

1. The basis of the settlement has been sealed by agreement of the parties in the District Court and has been maintained in camera by this Court. For these reasons, no definitive accounting of time and allocations of fees are set forth herein. Further, in keeping with the in camera designation, all applications have been maintained in camera by this Court.

Forty percent (40%) of any recovery to be split evenly between the two firms.

Office costs and out of pocket expenses such as telephone, photocopying, photographs, fees paid to third parties on client's behalf, etc. shall be paid by the client.

This Court concludes such a contingency fee agreement is not binding on this Court. *Blanchard v. Bergeron,* — U.S. —, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). However, we do not dismiss it; an agreement between parties is always relevant in these matters. The agreement does supersede the previous agreement between the Debtor and Smith & Valdez, P.A. and represent the intent of the parties when entering into the agreement.

Each attorney has been required to set forth the basis upon which it was entitled to fees and costs in conformance with the U.S. Trustee's Guidelines for Fee Applications (see Appendix). Ron Smith showed in his application 1,365.1 hours were expended at an hourly rate of $125.00 per hour. Costs were shown at $10,527.29. Miguel Valdez set out in his application 988.95 hours of attorney services at the rate of $75.00 per hour. Smith & Fuller, P.A. set forth 2,009 hours at a rate of $130.00 per hour for Diane Fuller and $150.00 per hour for Hugh Smith. Associates were compensated at $75.00 per hour. Costs associated with the patent litigation were $43,078.55 plus an additional $1,773.57 shown in their supplemental application. Smith & Fuller, P.A. also seek fees relating to its bankruptcy activities in the amount of $21,049.00 and costs of $3,034.59.

The Debtor and Miguel Valdez did not testify although their attorneys did participate in the hearings. Ron Smith testified as to his activities in the patent litigation. While emphasizing his services, he downplayed the services of Miguel Valdez. The thrust of his testimony (and basis of the Debtor's objection) as to services of Smith & Fuller, P.A., was the settlement of the patent litigation was ill advised. Subsequent testimony showed Ron Smith, as well as the Debtor, were timely advised of all settlement negotiations and were involved in its ultimate resolution and signed the settlement agreement.

Diane Fuller testified at length as to the activities of her firm. However, the major supporting testimony for Smith & Fuller, P.A. was the testimony of David Partlow, a local patent attorney who reviewed the files of Smith & Fuller, P.A. and testified as an expert witness. Some bankruptcy courts have taken the position it is not necessary to have expert witnesses testify as to the services of counsel, such a view may be limited to those inquiries where the particular counsel has appeared in the bankruptcy case and the matters have all been bankruptcy related. Here, the expert witness was of significant assistance to the Court in describing not only the patent litigation, but the various proceedings which took place in that case. David Partlow testified under the circumstances, the Bilgutay litigation was a very difficult one, and few members of the Bar would be interested in taking on such a matter where it was already set for trial. This fact is borne out by Ron Smith's testimony that the Debtor had wanted various attorneys to represent him but none were available or interested. Further, David Partlow testified to each of the various aspects associated with the Fifth Circuit decision in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

Twenty-two depositions were taken; over four hundred requests for admissions were answered; and the Smith & Fuller firm had to respond to joint motions for summary judgment filed by the defendants. While the patent issues may have not been difficult per se, the defendants, in opposition to the Debtor, had unlimited resources. One of the great difficulties with the case was expert witnesses. Ron Smith testified over one hundred experts had been contacted but two were retained; by the time of the trial all had withdrawn. Nonetheless, attorneys for the Debtor were able to put together the settlement. A further wrinkle related to certain expert opinions not disclosed to Smith & Fuller, P.A. when they took on the case. One patent attorney prior to the employment of Smith & Fuller, P.A. had given an opinion letter that the

Debtor's claim had no merit. While this information appeared to be known to the Debtor and to Ron Smith, the Smith & Fuller firm did not become privy to same until a later deposition was taken.

It is quite clear to this Court the firm of Smith & Fuller, as compared with Ron Smith and Miguel Valdez, was faced with the most difficult part of the litigation under some of the most adverse circumstances. This is not to suggest Ron Smith or Miguel Valdez added nothing to this estate through their services, however, in proportion to that of Smith & Fuller, P.A., it was less than a fifty percent effort.

 In considering the evaluation of all the attorneys fees and costs in this case, the Court is quite cognizant of the various criteria upon which it should determine attorneys fees. The concept of lodestar, i.e., *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988); and the criteria of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Johnson v. Georgia Highway Express, Inc., supra;* and *American Benefit Life Insurance Company v. Baddock (In re First Colonial Corp. of America)*, 544 F.2d 1291 (5th Cir.1977) must be juxtaposed by the recent Supreme Court cases of *Blanchard v. Bergeron, supra,* and *Missouri v. Jenkins by Agyei,* —— U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). This Court is particularly guided by Judge Black's pragmatic decision in *Desisto College, Inc. v. The Town of Howey-in-the-Hills*, 718 F.Supp. 906 (M.D.Fla. 1989). While bankruptcy policy[2] may suggest a different focus, the criteria established by these decisions are applicable in this case as in any other federal court.

Initially, the use of the lodestar theorem would provide an estimate of the reasonable amount of attorney compensation.

The subsequent inquiry would be the adjustment, either up or down, of the lodestar amount in order to arrive at the final reasonable compensation for counsel. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Norman, supra* at 1302; *Desisto College, Inc., supra* at 922.

The lodestar equation provides for multiplying the number of hours reasonably expended by a reasonable hourly rate. From the testimony of the representative counsels and the expert witness, the prevailing market rate for counsel, which is the test for determining reasonable hourly rate, would be found to be: Ron Smith—$125.00 per hour; Miguel Valdez—$75.00 per hour; Hugh Smith—$150.00 per hour; Diane Fuller—$130.00 per hour; and associates for the firm of Smith & Fuller—$75.00 per hour. *See, Desisto College, Inc., supra* at 922.

Because of the settlement of this case and the fee applications were directed to matters presented before the District Court, this Court has had only a limited opportunity to observe counsel other than at the hearings in the bankruptcy case. With these factors in mind, and considering the testimony, the Court finds these hourly fees reasonable.[3]

The more difficult issue in dealing with the lodestar equation relates to the determination of the number of hours which were reasonably expended. This Court, of course, is bound by those decisions which have been referred to previously and within the context of Sections 327, 329, 330, and 503 of the Bankruptcy Code and Bankruptcy Rule 2016.

### APPLICATIONS OF RON SMITH AND MIGUEL VALDEZ

██ Ron Smith claims 1,365.1 hours were expended for the Debtor in the patent

---

**2.** The bankruptcy court has an affirmative duty to make an independent evaluation of reasonableness of all professional fees notwithstanding objections made by any party. *In re Ross*, 88 B.R. 471, 474 (Bankr.M.D.Ga.1988); *In re Wildman*, 72 B.R. 700, 705 (Bankr.N.D.Ill.1987). Within this context, the Court must consider whether the services benefitted the estate. Title 11 U.S.C. §§ 330; 503. *In re Garnas*, 40 B.R.

140, 142 (Bankr.N.D.1984); *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557 (Bankr. Utah, 1985).

**3.** This Court has considered the fact hourly fees were adjusted with time. Additional consideration was given to the length of time counsel has been awaiting payment of fees. *Missouri v. Jenkins by Agyei*, —— U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 299 (1989).

litigation. There is a substantial lack of detail associated with this application. While Ron Smith may not have been privy to the U.S. Trustee Guidelines when he began the patent litigation, the requirements of specificity in attorney fee applications should not be a novel requirement as state and federal law has for sometime required counsel to set out in detail its services to its clients when making application for fees. *Florida Patients Compensation v. Rowe,* 472 So.2d 1145, 1150 (Fla. 1985); *In re First Colonial Corp. of America, supra* at 1299. 40 to 50 hours claimed by Ron Smith are not substantiated by records. Travel time, claimed in the amount of 70 plus hours, was also not substantiated. It can only be guessed by matching dates with various costs such time was related to going to and from depositions or interviewing potential co-counsel. Without more, such time is not compensable where there is no showing it is directly related to services to the Debtor. Over 180 hours are designated as research, again without further detail. In light of the apparent complexity of the case and Ron Smith's avowed expertise, this is an area of the law where counsel should have the capacity of expounding his activities in the case. In comparison, his partner, Miguel Valdez, has been quite specific as to the subject matter of his research albeit generalized as to date and time.

60.9 hours are claimed for preparation of an opening statement although Smith & Fuller, P.A. was already retained to pursue the litigation. This time was not for the benefit of the Debtor's estate. Communications with co-counsel Smith & Fuller, P.A. showed 96.6 hours in meetings and telephone conversations and 98.9 hours of letters and memorandum subsequent to July, 1986 when the Smith & Fuller firm came into the case. There is no specificity to these communications. They can be verified as to date through the very detailed application of Smith & Fuller, P.A. There is nothing in Ron Smith's application to support the time spent as compensable. *In re Jensen–Farley Pictures,* 47 B.R. 557, 582 (Bankr. Utah 1985); *In re Amatex Corp.,* 70 B.R. 624, 626 (Bankr.E.D.Pa. 1985).

Ron Smith did not delineate communications with Miguel Valdez in his application. Conversely, Miguel Valdez' application shows 256 hours of meetings with Ron Smith during 1985 and 1986. Miguel Valdez shows joint meetings with the Debtor and Ron Smith, however, Ron Smith only shows meetings between himself and the Debtor. Miguel Valdez' seeks compensation for 988.95 hours of services to the Debtor. Besides the 256 hours of meetings with Ron Smith, the majority of the activities are reviewing articles, pleadings, documents, and other research. The application is indefinite as to date and generalized as to time. Further, there are substantial portions of clerical time, such as opening files, mail, maintaining files, and keeping files on expenses. These administrative overhead activities are not compensable and are considered within the initial determination of the reasonable hourly rate. 11 U.S.C. § 330(a)(2); *In re Wildman,* 72 B.R. 700, 731 (Bankr.N.D.Ill.1987); *In re Orthopaedic Technology, Inc.,* 97 B.R. 596, 602 (Bankr.Colo.1989).

As to the document review and research, its value to the Debtor is uncertain as there is no supporting evidence or testimony as to its utility. *See, In re Seneca Oil Co.,* 65 B.R. 902, 909 (Bankr.Okla.1986). Considering the separate application of Ron Smith and Miguel Valdez as one application, the reasonable number of compensable hours is deemed to be 1,000 after the above reductions and also considering a substantial portion of the time in 1985 and 1986 was duplicated by respective counsel plus a general inability of the applicants to meet the burden of proof as to the reasonableness of their services. *In re Wildman, supra* at 708; *In re Amatex Corp., supra* at 626. From the general consideration of these applications, the Court would mathematically apportion the fees for the purpose of this case alone in the following manner: 650 hours at $125.00 per hour or $81,250.00 for Ron Smith and 350 hours at $75.00 per hour or $26,250.00 for Miguel Valdez for a total of 1000 hours or $107,500.00.

As Miguel Valdez has sought no reimbursement for costs, we turn again to Ron Smith's application. Similarly, there are laundry lists with numbers, dates, and payees. There is no delineation as to services performed relative to these costs. Expenses for postmaster may have been for ordinary mail, for mailing the complaint, or for communication with the patent office. Payments to airlines, motels, and hotels may have been for the taking of depositions but again, such information is not provided to the Court. This Court could spend a substantial amount of time trying to match up dates of service and dates of expenses but this Court does not believe it has the duty to prove up the application. *Norman, supra* at 1303. Even if there was a coordination between those dates, the Court has no idea whether such activity took place for the benefit of the Debtor's estate. The Court considers those costs as non-recoverable. *In re Wildman, supra.* The Court will allow reimbursement for expenses associated with depositions in the amount of $1,009.77 (28 U.S.C. § 1920), and expert witness expenses of Walter A. Modance in the amount of $2,461.20. 28 U.S.C. § 1821. *See, Desisto College, Inc., supra* at 912, 913. The remaining costs of Ron Smith are not substantiated in the application nor proven through testimony or other documentation, thus not recoverable.

## APPLICATION OF SMITH & FULLER, P.A.

As of January 27, 1988, the firm of Smith & Fuller claims 1,610 hours of attorney fee services to the Debtor. Subsequent to that time, Smith & Fuller, P.A. were also involved in this Court's proceedings regarding approval of the settlement pursuant to Bankruptcy Rule 9019 as well as various hearings on the Debtor's objection to their fee application.

This Court has independently reviewed the applications and supplements thereto filed by the firm. This Court has given strong weight to David Partlow's testimony of the type of services necessary in the patent litigation. David Partlow, as Smith & Fuller, P.A.'s expert witness, testified after reviewing all the files and time sheets and the documents associated with the patent litigation, the reasonable number of hours that Smith & Fuller, P.A. had performed in the case was 1,586.2, and considering the hourly rates by that firm, between $125.00 and $150.00 per hour with associates being at $75.00 per hour, the reasonable compensation for their services should be at a minimum of $209,208.50 and a maximum of $248,827.00 on a quantum meruit basis. His testimony is that the reasonable time expended by the firm does not appear excessive, however, this Court's independent evaluation suggests 1,417.1 hours are a more exact number of hours considering various aspects of the patent litigation. This Court understands the beginning and ending periods of time established in the application and what David Partlow viewed as well as the various allocations of time to members of the firm may account for some of the differences between Mr. Partlow's and this Court's figures. Of course, this Court is the final arbiter in deciding the ultimate amount of time to be allowed. *Pierson & Gaylen v. Creel & Atwood (In The Matter of Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1252 (5th Cir.1986). The Court has eliminated travel time, multi-attorney conferences where not substantiated, and associates' file maintenance among other activities. *In re Horn & Hardart Baking Co.,* 30 B.R. 938, 944 (Bankr.E.D.Pa.1983); *In re Jensen–Farley Pictures, Inc., supra* at 582, 583. From this analysis, the Court finds the lodestar amounts are the following:

Hugh Smith—613.2 hours at $150.00 per hour = $91,980.00;

Diane Fuller—680.1 hours at $130.00 per hour = $88,413.00;

Steven Armstrong—50.5 hours at $75.00 per hour = $3,787.50;

Barbara Moore—40 hours at $75.00 per hour = $3,000.00;

Richard Solomon—20 hours at $75.00 = $1,500.00;

David Nelson—13.3 hours at $75.00 per hour = $997.50.

Total = $189,678.00 until January 27, 1988.

As to costs and expenses of the firm, this Court has already stated reimbursement of same would not be allowed where shown as firm overhead expenses. *In re Wildman, supra.* The Court will award costs and reimbursement for expenses as to court reporter's fees in the amount of $4,874.65, deposition costs, court costs and expert witness fees in the amount of $37,875.64 including those of David Partlow. *See*, Title 28 U.S.C. § 1920, 28 U.S.C. § 1821, *Desisto College, Inc., supra* at 911, 913. Admittedly, other bankruptcy courts have found fees and costs of defending a fee application not compensable. *In re Jessee,* 77 B.R. 59 (Bankr.W.Va.1987); *In re Four Star Terminals, Inc.,* 42 B.R. 419 (Bankr. Alaska 1984). However, this Court has found David Partlow's testimony of significant assistance, as mentioned earlier. If it were not for the Debtor's inconsequential objection and the internal dispute of Ron Smith and Miguel Valdez, expert testimony may have been eliminated. If there is anything to bemoan, it is the absence among members of the Bar to testify voluntarily and without renumeration for their colleagues. This disappointment aside, the Court allows David Partlow's expert fees.

Photocopies, when explained, can be recoverable when necessary for use in the case. 28 U.S.C. § 1920(4). However, the applications, including the initial supplement and second supplement, do not establish a right to reimbursement for photocopy costs, or long distance telephone charges, facsimile costs, or the like.

As to Smith & Fuller, P.A.'s services to the Debtor in the bankruptcy case, the Court distinguishes between those services and costs associated with the approval of the settlement in Bankruptcy Court and those which are only related to the application for fees and reimbursement of costs. For fees and costs after January 27, 1988, Smith & Fuller, P.A. have filed a second supplement to their application. As to the reimbursement of costs, other than that for David Partlow, the costs are not allowed. There is nothing in these supplements to characterize them other than overhead to the firm. Unless such costs are specifically described to take them outside the sphere of overhead, they will not be allowed. As to fees, this Court would award fees in the amount of $3,341.00 (25.7 hours at $130.00 per hour) up until April 16, 1988. The services upon which these fees are predicated were a benefit to the estate. They assisted in the resolution of the patent litigation and brought about the mechanism which will fund the Chapter 11 plan.

Where services relate to the development of the firm's applications and preparation for their defense, they may be compensable within limits. The criteria to be applied is the complexity of resolving the application, any novel issues associated with the claim for fees, and any relationship to the overall administration and benefit to the estate. Considering the length of time and the particular items set forth in the application, the fact the application relates both to activities in the District Court as well as the Bankruptcy Court, and the necessity to resolve these administrative expenses in relationship to funding the plan. A reasonable amount of compensable services related to the preparation of the application has been allowed. *In re W.G.S.C. Enterprises, Inc.,* 47 B.R. 53 (Bankr.N.D.Ga.1985); *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088 (5th Cir.1980).

■ This Court will not authorize fees for services subsequent to April 17, 1988, the date which this Court approved the settlement in the District Court pursuant to Bankruptcy Rule 9019. Attorneys' services thereafter were not for the benefit of the estate, but rather directed toward the maintenance and preservation of their claim.

## ADJUSTMENTS TO LODESTAR AMOUNT

■ The Eleventh Circuit established a criteria for making adjustments to the lodestar amount in *Norman, supra* at 1302, et seq. There, the Court stated "if the result was excellent, then the Court should compensate for all hours reasonably expended ... if the result was partial or limited

success, then lodestar must be reduced to an amount that is not excessive ..." *Id.* There is no doubt the results in this particular case were excellent. The fact one law firm may have contributed more to that result than another firm should not effect the compensation for reasonable hours expended unless there is a clear showing the efforts of one retarded the result. *In re J.V. Knitting Service, Inc.,* 22 B.R. 543 (Bankr.S.D.Fla.1982). The Court does not find a basis for reducing the lodestar amount as to any firm seeking fees herein.

If the results obtained were exceptional, then some enhancement of the lodestar might be called for. [*Pennsylvania v.*] *Delaware Valley Citizens' Council I,* [478 U.S. 546] 106 S.Ct. [3088] at 3098 [92 L.Ed.2d 439]. Exceptional results are results that are out of the ordinary, unusual or rare. Ordinarily, results are not exceptional merely because of the nature of the right vindicated or the amount recovered. The law is usually faithful to its teachings, and so an outcome that is not unexpected in the context of extant substantive law will not ordinarily be exceptional.

Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. *Blum,* 465 U.S. at 899, 104 S.Ct. at 1549. This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate. *Id.; Delaware Valley Citizens Council I,* 106 S.Ct. at 3098.

*Norman, supra* at 1302.

The quality of representation by Smith & Fuller, P.A. was outstanding in the totality of the circumstances of coming into the case after trial was set and its association with the expert witness crisis. The results in this patent litigation might be considered extraordinary in the sense of obtaining a settlement under those circumstances. The results in law were not unusual or rare. This Court views the *Norman* decision to require a showing of rare or unique circumstances in order for the Court to award an enhancement. An enhancement is the exception, not the rule. Herculean efforts by counsel are rewarded by finding such efforts are reasonable expenditures of time. Further, the Court does not find counsel met its burden to produce specific evidence to enhance their fees. This Court is called upon to award fees for services made in another forum on issues which are not before it except as reflected in the application for fees and costs. There is no way for the Court to value the subjective adjustments suggested in *Norman* and *Delaware Valley Citizen's Council,*[4] unless the parties to these fee applications establish clearly on the record the uniqueness and rarity of the case.[5] David Partlow's testimony stating the results of the litigation may have been a surprise to the general patent attorney community is anecdotal.

The contingency fee which would have resulted in twenty percent to the Smith & Fuller firm and twenty percent to the Smith & Valdez firm does not appear unique. In fact, if evaluated, the Smith & Fuller firm bargained for approximately ten percent less than the going contingency rate, and the Smith & Valdez firm took a five percent cut from their initial twenty-five percent agreement. The delay in payment has been weighed in determining the lodestar amount, however, the delay in this particular case should not be surprising to any litigator, and members of the Bar must anticipate bankruptcy and govern themselves accordingly when accepting cases or seeking fees.[6]

**4.** *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

**5.** *Burgess v. Klenske (In re Manoa Finance Co., Inc.),* 853 F.2d 687 (9th Cir.1988) suggested that the novelty and complexity of issues, special skill and experience of counsel, quality of representations and results obtained were subsumed in the lodestar rate.

**6.** In light of the Supreme Court decisions in *Blanchard v. Bergeron, supra,* and *Missouri v. Jenkins by Agyei, supra,* the issues of contingency fees and delay in payment are more appropriately ascribed to objective standards within

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the objections by the Debtor to the applications are overruled. It is further

ORDERED, ADJUDGED AND DE-CREED that the firm of Smith & Valdez is awarded fees in the amount of $107,500.00. Ron Smith is awarded reimbursement of expenses in the amount of $3,470.97. It is further

ORDERED, ADJUDGED AND DE-CREED that the law firm of Smith & Fuller, P.A. is awarded fees in the amount of $193,019.00 and reimbursement of expenses in the amount of $42,750.29. It is further

ORDERED, ADJUDGED AND DE-CREED that the Clerk, ten days after the entry of this Order, shall disburse to Smith & Fuller, P.A. the amount set forth above, and disburse to the registry of the Circuit Court for Pinellas County, Case No. 88–9491–12 the amount awarded to Ron Smith and Miguel Valdez (a/k/a Smith & Valdez, P.A.) as set forth above.

DONE AND ORDERED.

## APPENDIX

## GUIDELINES FOR FEE APPLICATIONS

The following Guidelines for payment of professional fees and expenses have been promulgated to assist attorneys in preparing Fee Applications. These Guidelines are not mandatory; however, their utilization may result in the preparation of more effective Fee Applications. Unusual circumstances may warrant deviation from these Guidelines; however, it is recommended that these Guidelines be followed in most instances.

### A. GENERAL CONSIDERATIONS

The Application for fees and/or expenses should take into consideration and address the 12 factors delineated in the *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.) *cert. denied* 431 U.S. 904 [97 S.Ct. 1696, 52 L.Ed.2d 388] (1977) as follows:

1) The time and labor required;
2) The novelty and difficulty of the questions;
3) The skill requisite to perform the service properly;
4) The preclusion of other employment due to acceptance of the case;
5) The customary fee;
6) Whether the fee is fixed or contingent;
7) Time limitations imposed by the client or other circumstances;
8) The amount involved and the results obtained;
9) The experience, reputation, and ability of the professionals;
10) The nature and length of the professional relationship with the client;
11) The "undesirability" of the case; and
12) Awards in similar cases.[1]

These factors assist the court in determining the amount of the lodestar to be awarded in the Fee Application.[2]

### B. FEE APPLICATIONS

1. The Fee Application should recite the date of the Bankruptcy Court Order approving the employment of the firm or individual and the time period for which the fees and/or expenses are requested, e.g., 1/3/87–4/30/87.

2. The Fee Application should identify whether it is the First, Second, or Third, etc. Fee Application. If it is an

---

the lodestar theorum rather than the subjective adjustments relating to enhancement or reduction of the lodestar amount.

**1.** 11 U.S.C. § 330; Rule 2016 of the Bankruptcy Rules; and Local Rule 409 of the United States Bankruptcy Court for the Middle District of Florida. See also *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir.1988) and *Norman v. Housing*

*Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988).

**2.** See *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Pennsylvania v. Delaware Valley Citizen's Counsel*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (Delaware Valley Citizen's Counsel II); and *Norman, supra*.

Amendment or a Supplement to a Fee Application, the Application being amended or supplemented should be identified, e.g., Amendment to First Fee Application.

3. The Fee Application should also set forth the amount of the retainer and any other compensation or consideration received. If the Application seeks fees and/or expenses to be applied against the retainer, the Application should so specify. Each Application should also set forth the status and the disposition of the retainer received.[3]

4. The Fee Application should include a detailed listing of all time spent by the professional on matters for which compensation is sought, including:[4]

A. Date of each service rendered.

B. Description of each service rendered.

It is not sufficient merely to state "research," "telephone call," "court appearance," "pleading," "negotiation," or "conference." The description should also identify the particular persons involved, the discrete tasks performed and any other matter related to such service. For example, "re-

search" should include the issue involved; "conference" and "negotiation" should identify the participants and the subject matter; "telephone call" should identify the individuals and the subject matter; "court appearance" should identify the specific hearing; and "pleading" should identify not only the specific pleading but also the task performed, i.e., drafting, cite-checking, etc.[5]

Do not attach copies of individual, handwritten timeslips. Copies of computer printouts are permissible, provided that all abbreviations utilized are explained.

C. Amount of time spent.

The time spent should be broken down in detail by the specific task performed. Summaries of amount of time spent are not adequate. Rather, each task performed should be listed separately together with the amount of time spent on that task.

A listing of tasks together ("lumping") under one entry is *only* permissible if there is a designation, in parentheses, of the amount of time spent on each task.[6]

Example:

| Date: | Attorney: | Time: | Task: |
|-------|-----------|-------|-------|
| 6/3/88 | JHL | 2.5 | Research exemptions under new Fla. law (2.3); phone call to client re: same (.2) |

Time increments should be reported in tenths of an hour, one-tenth (.1) equalling six minutes.

D. Designation of particular person who rendered the service.

The person who performed each service should be identified if the Applica-

tion seeks compensation for more than one individual's services.[7]

5. The Fee Application should contain a listing of the hourly rates charged by each person whose services form the basis for the fees requested. The Fee Application should contain a summary in substantially the following form:

---

**3.** See 11 U.S.C. § 329 and Rule 2016 of the Bankruptcy Rules.

**4.** See *Hensley, supra,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12; *NAACP v. City of Evergreen,* 812 F.2d 1332 (11th Cir.1987) and *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299–1300 (5th Cir.) *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

**5.** See Local Rule 409 and *Beverly Mfg. Corp., supra* at 370.

**6.** See *Beverly Mfg. Corp., supra* at 370.

**7.** See *First Colonial, supra* at 1299–1300, and *Beverly Mfg. Corp., supra* at 370.

| Attorney/Professional Name | Position/ Title | Hourly Rate | Total Hours This Appl'n | Total Fee Requested |
|---|---|---|---|---|
| Ex: John Doe, Esq. | Senior Partner | $150 | 10 | $1500 |

6. It is also recommended that, when appropriate, the services listed in the Fee Application be broken down into categories: [8]

 a. The General Bankruptcy case;

 b. Each Adversary Proceeding listed separately;

 c. Each Appeal listed separately.

Example: Long Distance Telephone Calls:
1/27/88 Call to Jones re: stay settlement $4.60.

As to each unusual or costly expense item, the Application should specify as to each such item: [9]

 a. Date the expense was incurred;

 b. Description of the expense;

 c. Amount of the expense; and

 d. Explanation/reason for incurring the expense.

## D. RESULT NARRATIVE

Each Fee Application should contain a narrative concerning the results obtained during the period for which the fees and/or expenses are requested. In so doing, the 12 factors delineated in *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.) *cert. denied* 431 U.S. 904 [97 S.Ct. 1696, 52 L.Ed.2d 388] (1977) as set forth in the General Considerations above should be considered.[10]

## C. REQUESTS FOR EXPENSES

A Fee Application that seeks reimbursement of expenses should include a summary which lists all expenses by category and amount (i.e., long distance telephone, copy costs, messenger and computer research).

It is also recommended that, when possible, each expense item be described in detail.

---

8. See *Norman, supra* at 1303.

9. See 11 U.S.C. § 330 and *In re Mandalay Shores*, 62 B.R. 758 (Bankr.M.D.Fla.1986). See also *In re GAC Corp.*, 14 B.R. 252 (S.D.Fla.1981)

and *In re Dinsmore Tire Center, Inc.*, 81 B.R. 136 (Bankr.S.D.Fla.1987).

10. See *Norman, supra* at 1303.