## In re EAST PEORIA HOTEL CORPORATION, Debtor.

### Bankruptcy No. 90–81855.

United States Bankruptcy Court, C.D. Illinois.

Oct. 8, 1991.

---

1. The court in *Wooten* also noted that the assignment may not be binding on the land trustee. *Wooten* 80 B.R. at 920.

John S. Elias, Linda L. Laugges, Keck, Mahin & Cate, Peoria, Ill., for debtor.

William H. Christison, Baymiller, Christison, Radley & Covey, Peoria, Ill., Trustee.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter came on to be heard on the applications for attorney's fees filed by the Debtor's law firm. A brief statement as to

the history of this Chapter 11 proceeding is necessary in order to put this Court's ruling on the applications into context.

The Debtor owned a motel facility and held a Holiday Inn franchise. The operation of the motel was conducted pursuant to a management contract with another company related to the Debtor through common ownership. On August 1, 1990, the Debtor filed a Chapter 11 petition. Its schedules show three priority creditors totaling $541,810.65, two secured creditors totaling $10,358,492.37 and one hundred fifteen unsecured creditors totaling $897,202.16.[1]

The major secured creditor, which held the mortgage on the motel facility, filed several pleadings in an attempt to defeat the attempted reorganization and opposed the various steps which the Debtor took in an attempt to reorganize. The Debtor likewise opposed the secured creditor's action and initiated its own in an attempt to defeat the secured creditor's claim. The Debtor was represented by a large Chicago law firm with an office in Peoria, Illinois. Much of the legal work was done in the Chicago office, communicated to Peoria, where the local attorneys took the final steps, such as appearing in court, negotiating with the major secured creditor's local counsel, etc.

In addition to the normal legal services performed in the Chapter 11 reorganization attempt, the law firm either defended against or initiated several key matters. The first was the major secured creditor's request to have the automatic stay lifted, which was filed on September 5, 1990. The law firm filed an answer on September 26, 1990, and participated in the pretrial conference held on October 1, 1990. Before the final hearing, a Chapter 11 Trustee was appointed. The final hearing was held on December 27, 1990. At the hearing the major opposition was presented by the Chapter 11 Trustee. The automatic stay was lifted on December 27, 1990.

On October 18, 1990, the franchisor also filed a request to lift the automatic stay in order to terminate the franchise. This litigation followed a pattern similar to the one indicated above, and on December 27, 1990, this request was also granted.

On September 20, 1990, the Debtor filed an application to assume the management contract and several applications to assume equipment leases. These were opposed by the major secured creditor and the U.S. Trustee. These applications were denied on November 26, 1990.

On October 19, 1990, the U.S. Trustee filed an application for the appointment of a Chapter 11 Trustee, which was supported by the major secured creditor and opposed by the Debtor. The application was allowed on November 26, 1990.

The Debtor filed an application to obtain special counsel to pursue a lender liability action against the major secured creditor. The original application was filed by the law firm, but the written response to the major secured creditor's opposition and the oral argument in support of its application was by the special counsel. This application was denied on November 26, 1990.

On November 7, 1990, the Debtor filed an application to employ a broker to sell the motel facility, which was supported by the Trustee, but opposed by the major secured creditor. This application was denied on December 27, 1990.

On November 13, 1990, the major secured creditor filed a motion to dismiss the Chapter 11 proceeding, to which the Debtor responded. On December 27, 1990, the proceeding was converted to one under Chapter 7.

■ The law firm filed two applications for fees. The first was an interim request for $28,069.25 in fees and $1,891.66 in costs. The second was a final fee application which sought additional fees of $7,597.00, and additional costs of $1,082.08,

---

1. One of the scheduled priority creditors is actually a group of wage creditors with claims totaling $63,235.15. The other two priority creditors are the State of Illinois for sales taxes in the amount of $40,715.00 and the County of Taze-well, Illinois, for real estate taxes in the amount of $437,860.06. The major secured creditor's claim is scheduled at $10,347,406.96. The corporate manager's unsecured claim is scheduled for $714,063.40.

for total fees of $35,666.25 and total costs of $2,974.14. The law firm then filed a supplemental application for final compensation which sought total fees of $37,468.75 and total expenses of $3,247.83. The U.S. Trustee opposed the fee request. The opposition raised a variety of specific objections such as the manner in which the legal services are described in the applications, the reasonableness of the hourly rates, and the necessity of the services, along with the objection that the results do not justify a fee award in the amount requested. Even without the U.S. Trustee's opposition, this Court has an independent obligation to review the fee applications to determine if they are appropriate. *In re J.A. & L.C. Brown Co., Inc.,* 75 B.R. 539 (E.D.Pa.1987); *Matter of Bilgutay,* 108 B.R. 333 (Bkrtcy. M.D.Fla.1989).

Prior to the adoption of the Bankruptcy Code, the awarding of appropriate attorney fees in a non routine bankruptcy proceeding was often a difficult, if not controversial, determination based on factors which were not totally objective in nature. Some courts sought to bring objectivity to the process. *See In the Matter of First Colonial Corp. of America,* 544 F.2d 1291, at 1298 (5th Cir.1977). With the adoption of the Bankruptcy Code, Congress, through Section 330, 11 U.S.C. Section 330, sought to eliminate. arbitrary limits on fees and prescribe standards for determining fees.

Now Section 330 is the starting point. It provides for

> reasonable compensation for actual, necessary services rendered by such ... attorney ... and by any para-professional persons employed by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title;

It is clear from Section 330 that attorneys representing a debtor are entitled to "reasonable compensation". It is also clear that the last provision of Section 330 was inserted to eliminate arbitrary limits on compensation and to factor into the determination a consideration of attorney compensation in non bankruptcy areas of specialization. *In re McCombs,* 751 F.2d 286 (8th Cir.1984); *In re Jansen,* 47 B.R. 641 (Bkrtcy.D.Ariz.1985).

But Section 330 still presents interpretive issues. These issues persist because the difficulty with bringing objectivity to the determination and in applying the standards of Section 330 is that the ultimate standard of Section 330 is that fees are to be "reasonable" and that term by its nature can be difficult to quantify, in particular where there are a variety of claimants competing for a limited amount of dollars which is insufficient to meet all their claims. What is reasonable to an attorney who has worked long and hard, but perhaps unsuccessfully, for a debtor is different from what is reasonable to a creditor who is receiving nothing or little through the bankruptcy proceeding.

A recent publication of the American Bankruptcy Institute discusses a host of these issues. *See Am. Bankr.Inst., American Bankruptcy Institute report on Professional Compensation in Bankruptcy Cases,* (C.R. Wanner Rep.1991). For example, even though Section 330 clearly indicates that "comparable services" is an important factor to be considered, should it be controlling. Section 330 also contains other factors such as "the nature, the extent, and the value of such services and the time spent on such services". It is suggested most cases balance these various factors, but that the weight to be given the "comparable services" factor remains an issue.

Another issue discussed in the publication is whether the "Lodestar" approach used in the non-bankruptcy case of *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir. 1988), or the test set forth in the non-bankruptcy case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), as applied to bankruptcy, in the pre-Section 330 case of *In the Matter of First Colonial Corp. of America, supra,* is applicable. Here it is suggested the "Lodestar" approach seems to be the most popular with the bankruptcy courts with

some applying the *Johnson* test while others apply a combination.

Yet another issue discussed in the publication is whether in measuring value should results or input be controlling, with the observation being that neither is without some criticism.

Even though these issues exist, the decided cases do provide a procedural framework for making the determination and there is a high degree of consistency between the standards of Section 330 and the decided cases which can give guidance to a court when having to determine reasonable attorney fees. The process is not a mechanical one, but one which requires a court to exercise judgment based on the standards and its knowledge of what occurred in the bankruptcy proceeding.

In *In the Matter of First Colonial Corp. of America, supra,* the court indicated that the determination of reasonable attorney's fees is a three-step process. The first step involves the bankruptcy judge ascertaining the nature and extent of the services supplied by the attorney. To this end, the attorney seeking compensation should file a statement which recites the number of hours worked and contains a description of how each of those hours was spent.

In the case before this Court each application sets forth in a detailed fashion, the name of each attorney or paralegal providing service, their requested hourly rate, the total number of hours of services performed, a specific listing of dates, itemization and time of all services performed broken down into categories, and an itemization of costs. However, in several instances the information is presented in such a vague fashion that compensation cannot be awarded for the services performed. Some services are insufficiently described by entries such as "prep. of documents", "research", and "review of file". Some entries refer to attorneys by initials without explaining their status in the law firm so it is not possible to determine an applicable hourly rate for them.

The second step is to hold an evidentiary hearing if there are disputed issues of fact. In this Court's experience, this second step also provides a means for the court to inquire into the basis of the fee request and for parties in interest to elaborate on their positions either in support or against the fee request. In this case, a hearing was held and all interested parties were given an opportunity to present whatever evidence and arguments they wished to make. The interested parties did not present any evidence, but merely argued their positions, primarily relying upon what can be gleaned from the fee applications.

■ The third step is for the court to determine what is reasonable compensation, briefly explaining its findings and reason upon which its award is based including an indication of how each of the following twelve factors, cited in *Johnson v. Georgia Highway Express, Inc., supra,* affected its decision:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

In applying these guidelines, the court *In the Matter of First Colonial Corp. of America, supra,* stated that two additional considerations must be kept in mind. First, the strong policy of the Bankruptcy Act that the estate be administered as efficiently as possible, and second, there are a

number of peculiarities of bankruptcy practice.[2]

A number of courts have held that the twelve factors in *Johnson* have been superseded by the "Lodestar" approach set forth in *Norman, supra. See In re Great Sweats of Virginia, Inc.,* 109 B.R. 696 (E.D.Va.1989); *In re Port Royal Land & Timber Co.,* 105 B.R. 72 (Bkrtcy.S.D.Ala. 1989). The "Lodestar" approach requires a court to determine a reasonable hourly rate, compute the hours reasonably spent and possibly adjust that fee upwards or downwards for results. Just as Congress sought to eliminate the subjectivity in fee awards in enacting Section 330 of the Bankruptcy Code, the "Lodestar" approach evolved for much the same reason. *Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The United States Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a nonbankruptcy case, discussed the Lodestar method:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers very widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethi-

cally is obligated to exclude such hours from his fee submission.

The Lodestar approach does not end with the product of reasonable hours times a reasonable rate. *Hensley, supra.* The resulting fee may be either unreasonably high or unreasonably low. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The most important factor in adjusting the fee upward or downward is the results obtained. The court in *Hensley* explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

As the Supreme Court noted in *Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), upward modifications of the Lode-

---

**2.** The court in *First Colonial* stated that the "[bankruptcy judge] should award an amount which is at the lower end of the spectrum of reasonableness ... since attorneys are acting not as private persons but as officers of the court, they should not expect to be compensated as generously for their services as they might be were they privately employed." This consideration was rejected by the Bankruptcy Code and is no longer appropriate.

star amount are only proper in "rare" and "exceptional" cases. The court stated:

A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a "reasonable" fee is wholly consistent with the rationale behind the usual fee-shifting statute, including the one in the present case. These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, such as Delaware Valley, find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

Moreover, when an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance. In short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

Bankruptcy courts, in applying the Lodestar approach, have both enhanced and reduced fee awards based on the results obtained. *See In re WHET, Inc.*, 61 B.R. 709 (Bkrtcy.D.Mass.1986); *Matter of Hutter Construction Co.*, 126 B.R. 1005 (Bkrtcy. E.D.Wis.1991).

As a number of courts have commented, the Lodestar approach subsumes a number of the *Johnson* factors. *See Hensley, supra.* The inclusion of several factors listed under the *Johnson* approach into both the determination of a "reasonable rate" and the number of hours "reasonably expended," is shown by the court's comments in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984):

The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates. There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award.

While the Lodestar analysis has been termed a method which is "clear and crisp,"[3] it necessarily calls for a subjective analysis on behalf of the court. The court must first determine the number of hours which were "reasonably expended" and, after multiplying that number by a "reasonable hourly rate," decide whether the resulting fee is reasonable in light of the results obtained. Thus, total objectivity is impossible, and in fact not desirable, for the element of reasonableness is always, and should be, a subjective determination.

In this Court's view, though the factors considered under *Johnson*, the "Lodestar" approach and Section 330 of the Bankruptcy Code are not identically termed, there is a sense of harmony between them and a court need not pick one over the others. The end result would be

---

**3.** *In re Great Sweats of Virginia, Inc., supra.*

the same, whatever approach was applied. Although the tests are stated differently, the primary considerations are the same. The parallelism can be seen by comparing the relevant factors under all three approaches. The following table demonstrates this congruence.

| FACTORS CONSIDERED | | | |
|---|---|---|---|
| Section 330:   1. Actual, necessary services<br>  2. Nature of services<br>  3. Extent of services<br>  4. Value of services<br>  5. Time spent<br>  6. Cost of comparable services in nonbankruptcy case | | | |
| | LODESTAR | | |
| | Reasonable Rates | Reasonably Expended Hours | Enhancement/ Reduction |
| JOHNSON | | | |
| Time & Labor required | | 1, 3, 5 | |
| Novelty & Difficulty of issues | | 2 | |
| Requisite Skill | 2 | | |
| Preclusion of Other Employment<br>  a. Conflicts of Interest | | | |
|   b. Amount of Time Spent | | 5 | |
| Customary Fee | 4, 6 | | |
| Fixed or Contingent Fee | | | |
| Time Limitations Imposed by Client | | 2 | |
| Amount Involved & Results Obtained | | | 4 * |
| Experience, reputation & Ability of Attorneys | 2 | | |
| "Undesirability" of case | | | |
| Prior relationship w/client | | | |
| Awards in Similar Cases | 6 | | |

\* Given the Supreme Court's opinion in *Pennsylvania v. Del.*, an enhancement based on results obtained is quite questionable. It would be limited to "rare and exceptional" cases. Generally speaking, there are not too many miracles performed in the bankruptcy court.

This Court now turns its attention to these common factors emphasizing those set forth in Section 330.

██ 1. Determination of a reasonable hourly rate. This determination involves the first factor in the "Lodestar" approach and subsumes a number of the "Johnson" factors, primarily the "customary fee" and the "experience, reputation and ability of the attorneys" and "requisite skill" as well. A reasonable hourly rate is usually considered to be the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. In the context of Section 330, a court should consider the prevailing market rate of lawyers providing non-bankruptcy services. The party seeking the fees has the burden of proof. It has been this Court's experience that lawyers seeking fees fail to present any evidence as to the prevailing market rate. The law firm is no exception. It relies solely on the rate established by the law firm. This forces this Court to determine a prevailing rate relying upon its experiences, including what it understands bankruptcy and non-bankruptcy lawyers are charging, and numerous other fee applications it has seen. Based on its experi-

ences, this Court has established the following hourly rates:

$150.00 per hour for senior partners.

$125.00 per hour for junior partners.

$100.00 per hour for senior associates.

$80.00 per hour for junior associates.

$40.00 per hour for paralegals.[4]

The fee applications list two partners, one at $185.00 per hour and the other at $140.00 per hour. The first appears to have recently joined the firm and to be located in the firm's Chicago office with approximately twelve years of experience, specializing in bankruptcy. The second is located in the firm's Peoria office with approximately twelve years of experience, but not specializing in bankruptcy.[5] Neither of these two partners can be considered senior partners. The appropriate rates for them are $125.00 per hour. Three associates are listed in the application, one at $100.00 per hour and two at $90.00 per hour. The one at $100.00 per hour is located in the Chicago office and has six years of experience. The other two provided services from the Peoria office and have limited experience. None would qualify as senior associates, and their rates should be $80.00 per hour. The paralegal's rate is within the Court's allowable rates.

■ 2. Hours reasonably spent. The primary *Johnson* factors encompassed in determining the number of hours reasonably spent are the time and labor required as well as a consideration of the novelty and difficulty of the issues.

There were no novel or difficult legal issues presented. The only issue which was out of the ordinary for a Chapter 11 proceeding was the attempt to attack the major secured creditor under the theory of lender liability. But that issue was briefed and argued by the special counsel who the Debtor sought to hire and not the law firm.

In the context of Section 330, the examination is into the time spent and whether the services were necessary. For a number of reasons the hours spent need to be reduced to exclude unnecessary services. First, on November 26, 1990, a Chapter 11 trustee was appointed. This occurred approximately three months after the initial filing and when the case was in its initial stages. After this point the law firm's efforts on behalf of the estate should have been minimal. *In re Ginji Corporation*, 117 B.R. 983, 24 C.B.C.2d 216 (D.Nevada 1990). This conclusion is supported by the Court's observation that on several occasions the law firm deferred to the Chapter 11 trustee when arguing before the Court. Second, the law firm also has requested fees for services rendered after the conversion from Chapter 11 to Chapter 7 without showing any benefit to the estate. Third, and in some instances related to the first reason, the Peoria office spent considerable time preparing for hearings which, based on this Court's observation, resulted in minimal participation in those hearings. Fourth, coordination between the Chicago and Peoria offices resulted in unnecessary services. It would appear that the bankruptcy expertise was in the Chicago office, the local office handled client contact and court appearances, and that the Chicago office had to advise the Peoria office as to how to proceed. Over fourteen hours were spent coordinating between the Chicago and Peoria office. While the Debtor was free to choose whatever law firm it desired, the estate and creditors should not be expected to pay for the additional cost of using bankruptcy attorneys who are located approximately 160 miles from the debtors and the court's location. Notwithstanding the law firm's apparent internal organization the local office failed to take advantage of the expertise in the Chicago office and spent considerable time researching bankruptcy matters which the Chicago office could have easily answered. Fifth, time was spent researching very basic requirements such as "time for filing an-

---

4. These are the rates this Court will continue to apply absent a showing that the prevailing market rate is different or absent such a showing the Court on its own initiative determines a change is appropriate.

5. No proof was presented as to this factor. The conclusion came from the Court's general knowledge of the Peoria office and a review of Martindale–Hubbell.

swer" and "exclusive period for filing plan", or attorneys billed for legal services what amounted to clerical work. Sixth, some work was cumulative. For example, four attorneys spent 12.25 hours to draft, review and revise a single response to a motion to lift stay. Seventh, some work was excessive, for example, one attorney spent 16 hours to prepare for the hearing on the appointment of a trustee.

■ 3. Should the fee based on rate and hours be adjusted for results. Section 330 requires consideration of this factor, as the section refers to the "value of such services". As previously noted, value could be analyzed based on results achieved or efforts expended, or both. In this Court's view, although consideration needs to be given to the effort expended, it is equally important to consider the results achieved. Keeping in mind the direction of Section 330 that consideration is to be given to the cost of comparable non-bankruptcy services, it has been this Court's experience that as a general rule clients engaged in business expect results. There may be isolated situations where a client is willing to pay to "roll the dice" knowing that the chances of receiving favorable results are minimal. But they are the rare exceptions. In most instances, clients expect results that benefit them, not merely efforts that benefit the professionals. It also has been this Court's experience that although many reorganizations are filed when the debtor's back is to the wall and the filing is a last effort to save the business, the debtor expects to receive some beneficial results. The debtor expects to keep its business, in whole or in part. Likewise, creditors expect some form of payment. The purposes of a reorganization are to achieve those goals, not to reward professionals for effort. To determine value based on effort, or by giving effort more weight than value, ignores the economic expectations of the parties and the reasons for filing a reorganization. In this case, the Chapter 11 proceeding was extremely short lived, lasting approximately four months before it was converted to a Chapter 7 proceeding. No plan and disclosure statement was filed. Every major contested matter was resolved against the Debtor. This was a case that should never have been filed as a Chapter 11 and creditors should not be expected to further pay for the decision to do so and for efforts to maintain it.

The Court now turns its attention to the remaining *Johnson* factors. This additional consideration is necessary to determine if these factors are factors under Section 330, and if so, how they impact the fee applications.

1. The skill requisite to perform the legal service properly. Here again Section 330 refers to this factor when it refers to the nature of the services. A consideration of the nature of the services involves consideration of the nature of the problem and consideration of the skills brought to solve the problem. As previously noted, there were no novel and difficult legal or factual issues. The difficulty arose from the attempt of the Debtor to maintain a Chapter 11 when a Chapter 7 was appropriate. To represent the Debtor in this matter did not require any special skill.

2. The preclusion of other employment by the attorney due to acceptance of the case. This is not a factor to be considered under Section 330. Even if it were, the law firm presented no evidence in this regard. In fact, the Debtor's law firm is a large Chicago firm and it is safe to assume this representation was an extremely minor part of its clientele. Therefore, the Court can only conclude that the Debtor's law firm was not precluded from representing others.

■ 3. The customary fee and awards in similar cases. Both of these factors can be considered under Section 330 as they go to the value of the services. A customary fee can be analyzed both from the basis of an hourly rate and the number of hours involved, and a total fee for similar bankruptcy proceedings. The hourly analysis has been discussed above. The total fees and costs of $40,716.58, $37,468.75 in fees and $3,247.83 in costs, are excessive. Fees of this nature would be high for a successful reorganization considering that there was basically only one major creditor to be

dealt with. Certainly they are excessive for a short term aborted reorganization.

4. Whether the fee is fixed or contingent. This is not a factor to be considered under Section 330. While this factor may be relevant in some cases, (*see Southern Merchandise Distributors, Inc.*, 117 B.R. 725 (Bkrtcy.S.D.Fla.1990), it is not relevant here.

5. Time limitations imposed by the client or the circumstances. This factor is referred to under Section 330 under nature of services. This Court is not aware of any time limitations imposed by the Debtor or the circumstances of the case, and no evidence was presented to justify a fee based on this factor.

6. The experience, reputation, and ability of the attorneys. This factor impacts the selection of a reasonable rate discussed above. The attorneys in the law firm presented no evidence to show their experience, reputation, and ability. Although one of the attorneys appears to specialize in bankruptcy, his experience in years of practice is limited and nothing has been presented to show a reputation or ability which would justify the fee being requested. Furthermore, this Court is not aware of any scholarly publications written by any of the attorneys in the law firm or their participation in activities such as Continuing Legal Education seminars which would indicate that they have been recognized by their peers as having any exceptional experience, reputation, or ability in the bankruptcy area.

7. The undesirability of the case. This is not a factor to be considered under Section 330.

8. The nature and length of the professional relationship with the client. This is not a factor to be considered under Section 330.

Neither the trustee nor the U.S. Trustee objected to the reimbursement of costs, nor was there any evidence presented that the costs were unreasonable or unnecessary. Considering that courts, in awarding attorney's fees, are somewhat reluctant to disallow costs, this Court concludes the Debtor's law firm should be reimbursed for costs advanced in the amount of $3,247.83.

Having considered all of these facts, this Court FINDS:

1. That the costs advanced of $3,247.83 were for actual and necessary expenses.

2. That the requested attorney fees were for actual, but in part unnecessary services, and the rates were excessive, and therefore the requested attorney fees were unreasonable.

3. That based upon careful consideration of the factors set forth above, reasonable compensation for necessary representation of the Debtor should be the $20,000.00 which was paid by the retainer.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.