**In re Louis D. BURRELL and E. Jean Burrell, Debtors.**

**No. 89–91427.**

United States Bankruptcy Court, C.D. Illinois.

Feb. 1, 2002.

Louise B. Bigott, Aroma Park, IL, John F. Brennan, Chicago, IL, James A. Coale, Decatur, IL, Martha J. Danhausen, Gregory A. Deck, Marshall R. Dusenbury, Kankakee, IL, Karen E. Evangelista, Rochester Hills, MI, John Ferjak, John J. Grieger, Jr., Chicago, IL, Thomas M. Goodwin, Danville, IL, Brenda L. Gorski, J. Gregory Householter, William O. Schmidt, Kankakee, IL, Stephen P. Schrimps, Edwardsville, IL, Alan F. Smietanski, Bradley, IL, James T. Watkins, Malvern, PA, for creditors.

Richard F. Kurth, Danville, IL, Charles E. Ruch, Jr., Bourbonnais, IL, Larry D. Serene, Kankakee, IL, for debtors.

*OPINION*

GERALD D. FINES, Chief Judge.

This matter having come before the Court on a Motion for Leave to Withdraw Attorney Appearance filed by Attorney Richard F. Kurth, Petition for Attorney Fees filed by Richard F. Kurth, Debtors' objection thereto, and Motion to Reinstate Motion for Civil Contempt; the Court, having heard arguments of the parties and reviewed the record of Debtors' bankruptcy proceeding and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

*Findings of Fact*

In considering the matters presently before it, the Court finds it helpful to first set out a complete chronology of the Debtors' bankruptcy proceeding from its inception to the present time. That chronology, in pertinent part, is as follows:

1. The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on December 4, 1989. The Debtors were initially represented by Attorney Larry Serene. In their original bankruptcy schedules, the Debtors scheduled Kankakee County as a Creditor holding claims for unpaid real estate taxes for the years 1984 though 1988, in the approximate amount of $71,450.15. The majority of the Debtors' assets included numerous parcels of rental real estate located in and around the City of Kankakee, Illinois.

2. The first meeting of creditors in Debtors' bankruptcy was scheduled and held on February 12, 1990, at which time it was noted that the Court was having difficulty in getting the Debtors to file all required schedules, including the schedule of salary which was not filed until March 19, 1990.

3. Apparently, difficulties developed between the Debtors and their then-attorney, Larry Serene, as indicated by the fact that the Debtors began to file *pro se* documents following their first meeting of creditors. On March 5, 1990, Attorney Larry Serene withdrew his representation of the Debtors, and Attorney Richard F. Kurth entered his appearance.

4. The Debtors' Chapter 11 plan of reorganization and disclosure statement were originally due to be filed on or before April 4, 1990. However, the Debtors were unable to meet the filing deadline, and an extension was granted until June 4, 1990.

5. On June 4, 1990, it was apparent that the Debtors were going to be again unable to file a plan and disclosure statement, and a final extension was granted until July 5, 1990.

6. On June 11, 1990, the Office of the United States Trustee moved to dismiss the Debtors' case for their failure to formulate a plan of reorganization. This Motion was later withdrawn upon the Debtors' filing of their Plan and Disclosure Statement.

7. On July 5, 1990, the Debtors' filed a Chapter 11 Plan of Reorganization and Disclosure Statement. In their Chapter 11 Plan, the Debtors, at Class Five, indicated that they would pay the sum of $75,000 to Kankakee County, for real estate taxes due for the years 1984 through 1988, over a period of five years, plus nine percent interest. Numerous objections were filed to the Debtors' Disclosure Statement indicating that the information was incomplete, and, as such, the Debtors' original Disclosure Statement was denied, on October 15, 1990, and the Debtors were given 14 days to file an amended disclosure statement. The Debtors did not meet the 14 day deadline. However, an Amended Disclosure Statement was filed on No-

vember 15, 1990, and approved, over objection, on December 14, 1990, a date 10 days after the one year anniversary of Debtors' Chapter 11 filing.

8. On February 19, 1991, the Office of the United States Trustee filed a Motion to Convert Debtors' Chapter 11 Case to One Under Chapter 7, indicating that the Debtors had not filed monthly reports as required, nor had they paid the fees to the United States Trustee's Office. At this time, numerous objections to confirmation were filed setting off several hearings concerning the confirmation of the Debtors' Chapter 11 Plan of Reorganization.

9. On July 8, 1991, the Office of the United States Trustee again filed a Motion to Convert Debtors' Chapter 11 Case to One Under Chapter 7, stating as cause that once again the Debtors had failed to file required reports and pay required fees.

10. At hearing in May 1991, the Court confirmed the Debtors' Chapter 11 Plan of Reorganization after numerous negotiations between Debtors and creditors, and the Court directed that the Debtors file an order of confirmation on or before May 21, 1991. The Order of Confirmation was not filed until August 21, 1991, at which time it was entered. During the three months between the date the Order of Confirmation was due and the date it was filed, numerous motions for relief from the automatic stay were being filed by various mortgage holders of the Debtors, indicating as cause that the Debtors were not paying current mortgage payments as they came due. The majority of these motions for relief from stay were eventually resolved by payments from the Debtors, albeit they were not timely made.

11. On December 18, 1991, the Office of the United States Trustee filed a Motion for Summary Dismissal, indicating that once again the Debtors were failing to file reports as they came due. At this time, it was noted by the Court that the Debtors had developed a pattern of failing to file necessary monthly reports and pay quarterly fees until such time as the Office of the United States Trustee filed either a motion for conversion or a motion for dismissal.

12. On February 28, 1992, Creditor, Security Lumber and Supply Co., filed a Motion to Dismiss Debtors' bankruptcy proceeding, stating as cause that payments as proposed in the Debtors' Plan were not being made. This Motion was later resolved by a payment from the Debtors.

13. On April 13, 1992, Creditor, First of America Bank, filed a Motion to Convert or Dismiss Debtors' bankruptcy proceeding, stating as cause that the Debtors were failing to make payments as proposed in their Plan as they came due. During this time, other mortgage creditors were filing motions for relief from stay based upon non-payment by the Debtors. As had become the case since the inception of Debtors' bankruptcy filing, the Debtors resolved these matters by payment when faced with the prospect of conversion, dismissal, or relief from the stay.

14. On August 16, 1993, Creditor, Security Lumber and Supply Co., filed a Motion to Dismiss Debtors' Chapter 11 proceeding based upon the fact that a payment had been made by the Debtors by check, and the check had been returned to the Creditor for non-sufficient funds. Once again, this matter was eventually resolved by a payment from the Debtors in the face of the possibility of dismissal.

15. On October 5, 1994, Debtors filed an Annual Report in which they admitted that, from "time to time" the Debtors fell into arrears on their Plan payments; how-

ever, the Debtors believed that they were current at that time.

16. On January 23, 1995, Creditor, First of America Bank, again filed a Motion to Convert or Dismiss Debtors' bankruptcy proceeding based upon non-payment of its debt. This Motion was subsequently resolved by a payment from the Debtors.

17. On April 24, 1995, Creditor, First of America Bank, again filed a Motion to Convert or Dismiss based upon non-payment, and, on July 24, 1995, a "drop dead" Order was entered requiring the Debtors to make payments on a timely basis, with the proviso that failure to do so would result in automatic relief from stay in the event Debtors fell behind and were unable to cure the default.

18. On October 6, 1995, Debtors filed a Motion to Dismiss and for Discharge of their Chapter 11 bankruptcy proceeding based upon their allegation that they had obtained financing with which to pay the balance of their Chapter 11 Plan as originally proposed.

19. On November 13, 1995, the Debtors' Motion to Dismiss and for Discharge was denied based upon the fact that the financing promised by the Debtors had not materialized. As a result, the Debtors were unable to obtain a discharge in their Chapter 11 bankruptcy proceeding, and a final decree was never entered, in that payments as proposed were not made in full.

20. On April 16, 1996, Debtors filed a Motion to Convert their Chapter 11 proceeding to one under Chapter 13 of the Bankruptcy Code. This Motion was subsequently allowed by Order entered May 14, 1996, together with an Order indicating that numerous documents necessary in the Debtors' Chapter 13 filing had not been filed. Debtors were directed to file the necessary documents within 15 days.

21. On May 29, 1996, Debtors were unable to file the necessary documents and were granted a 10 day extension to do so.

22. On June 13, 1996, once again it was evident that the Debtors had not filed the necessary documents, and a further extension of 7 days was granted.

23. On June 26, 1996, Debtors filed some of the missing documents which were required to have been filed on or before June 20, 1996.

24. On June 28, 1996, the Court received the remaining missing documents, most important of which was the Debtors' Schedule of Post–Petition Debts, in which they indicated that there were "none".

25. On July 22, 1996, both the Debtors and their attorney failed to appear at their scheduled first meeting of creditors, with the meeting being continued until September 5, 1996.

26. On September 5, 1996, the Debtors again failed to appear at their first meeting of creditors, resulting in a rescheduling of the hearing to October 10, 1996.

27. On September 16, 1996, a Motion for Relief from the Automatic Stay or in the Alternative Dismissal was filed by Creditor, National City Mortgage, stating as cause that the Debtors had failed to make payments to the Chapter 13 Trustee as required by their Plan.

28. On October 10, 1996, Debtors' first meeting of creditors in their Chapter 13 bankruptcy was held, and it is noted that, at that time, numerous objections had been filed to the Debtors' Chapter 13 Plan and additional motions for relief from the automatic stay had been filed based upon non-payment of debt.

29. On March 7, 1997, Debtors filed an Amended Chapter 13 Plan of Reorganiza-

tion, which was subsequently confirmed on May 1, 1997. It is here noted that this Amended Plan did not include any post-petition debt from the period of December 4, 1989, through the time of conversion on May 14, 1996.

30. On January 14, 1998, the Chapter 13 Trustee filed a Motion to Dismiss Debtors' bankruptcy proceeding indicating that the Debtors had missed a total of six payments at that time. This Motion was subsequently withdrawn by the Trustee on February 13, 1998, based upon the Debtors' promise to make the missing payments and make future payments in a timely manner.

31. On May 20, 1998, the Debtors filed a Motion for Temporary Restraining Order requesting that an action by Kankakee County to sell real estate located at 964 North Indiana, Kankakee, Illinois, for back taxes be stopped. This Motion was later withdrawn on June 12, 1998.

32. On September 4, 1998, the Debtors filed a Motion for Civil Contempt requesting that the Court find Kankakee County Treasurer Mark Frechette in contempt of Court for violation of the automatic stay as a result of his action to sell various parcels of the Debtors' real estate based upon unpaid real estate taxes for the years 1994 and 1995. Here the Court would note that the 1994 and 1995 real estate taxes had not been scheduled as debts in the Debtors' Chapter 13 bankruptcy proceeding, in that the Schedule of Post–Petition Debt filed by the Debtors on June 28, 1996, indicated that there were no post-petition debts.

33. On October 26, 2000, the Chapter 13 Trustee filed a Motion to Dismiss the Debtors' bankruptcy proceeding stating that, at that point in time, the Debtors had missed 15 scheduled plan payments. In relation to this Motion, the Court entered an Order on November 16, 2000, indicating that the Debtors would be given until Jan-

uary 15, 2001, to cure all plan arrearages, or the case would be dismissed.

34. On October 27, 2000, Debtors once again filed a Motion for Temporary Restraining Order requesting that the Court stop the sale of real estate for unpaid taxes by Kankakee County. This Motion was denied by an Order entered on January 31, 2001, based upon the Debtors failure to prove that the County was acting beyond the scope of its authority or in violation of the automatic stay.

*Conclusions of Law*

■ The Court will first consider the Motion to Reinstate Motion for Civil Contempt filed by the Debtors on August 30, 2001, in which the Debtors request that the Court enter an order reinstating the Motion for Civil Contempt filed against Kankakee County Treasurer, Mark Frechette, on September 4, 1998. In reviewing the record of Debtors' bankruptcy proceeding, the Court finds that the Motion for Civil Contempt at issue was considered by the Court, together with Adversary Case No. 00–9045, and dismissed by order of the Court on November 16, 2000. The Motion for Civil Contempt was predicated on allegations by the Debtors that Kankakee County Treasurer, Mark Frechette, had violated the automatic stay when he took actions to sell real estate owned by the Debtors for delinquent taxes in the years 1993, 1994, and 1995.

Pursuant to 11 U.S.C. § 362(h):

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

In dismissing both the Motion for Civil Contempt and Adversary Case No. 00–9045, the Court concluded that there had

been no violation of the automatic stay, either willful or technical, in that the real estate which was sold for delinquent taxes concerned tax years which were not a part of the Debtors' Chapter 13 bankruptcy. As accurately pointed out by Defendant, Zion Gate Missionary Baptist Church, in its opposition brief in Adversary Case No. 00–9045, filed on October 24, 2000, real estate taxes for which the Debtors were responsible subsequent to their original bankruptcy filing on December 4, 1989, were neither scheduled in their Chapter 13 petition nor included in the Debtors' Amended Chapter 13 Plan. As such, the Debtors remain responsible for the payment of those taxes, and any liens on the Debtors' real estate resulting from the non-payment of those taxes have survived the Debtors' bankruptcy filing. As noted above, at paragraph 24 of its Findings of Fact, it is clear that, on June 28, 1996, when the Debtors' filed their Schedule of Post–Petition Debts to be included in their Chapter 13 bankruptcy, "none" were listed. This being the case, the Court can easily conclude that Kankakee County and the Kankakee County Treasurer were well within their rights to seek payment of delinquent real estate taxes for the years following 1989, and to sell the real estate for non-payment of those taxes, as has been the case. These real estate taxes, for the years subsequent to 1989, clearly could not have been included in Debtors' Chapter 11 bankruptcy, as they were post-petition and were not included in Debtors' Chapter 13 bankruptcy, as they were not scheduled nor were they referenced in the Amended Chapter 13 Plan filed by the Debtors on March 7, 1997, and subsequently confirmed on May 1, 1997. For these reasons, the Motion to Reinstate Motion for Civil Contempt must be denied.

In addition to the reasons stated above for the denial of the Motion to Reinstate Motion for Civil Contempt, the Court further finds that the Motion to Reinstate Motion for Civil Contempt was not timely filed. Pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, Rule 59 of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings, and Rule 59(e) states, "Any motion to alter or amend a judgment must be filed no later than 10 days after entry of the judgment." The instant Motion to Reinstate Motion for Civil Contempt is, in essence, a motion to alter or amend the judgment of this Court in dismissing the Motion for Civil Contempt, and the Motion to Reinstate was clearly filed well beyond the 10 day time period.

In considering the Petition for Attorney Fees filed by Debtors' attorney, Richard F. Kurth, on September 21, 2001, the Court finds that Debtors' attorney seeks to be paid the sum of $29,050, in addition to fees in excess of $23,000, which have already been paid by the Debtors. The record of Debtors' bankruptcy proceeding reflects that the Trustee, James Geekie, is currently holding approximately $16,000, which may be paid to Debtors' attorney for fees or paid to creditors who have filed claims to increase the percentage of their recovery. Debtors' attorney seeks to have the $16,000 paid as part of his fee, with any remaining fees being due from the Debtors personally. The Debtors have objected to the payment of additional fees by way of a letter filed on October 12, 2001, in which the Debtors indicate that they have, in fact, paid their attorney in excess of $32,000. It is their belief that their attorney has not completed all work which he agreed to perform in a Contract of Employment which the parties entered into on April 17, 1996, and is, thus, not entitled to any additional fees at this time.

The procedure which this Court follows in evaluating fee applications has

long been established and is set out in detail in the case of *In re Chellino*, 209 B.R. 106 (Bankr.C.D.Ill.1996). In that case, this Court cited, with approval, the cases of *In re Wiedau's, Inc.*, 78 B.R. 904 (Bankr.S.D.Ill.1987); *In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987); and *In re East Peoria Hotel Corp.*, 145 B.R. 956 (Bankr.C.D.Ill.1991), for the proposition that fee applications must be accompanied by written justification supporting the fees requested. In the instant case, no such justification has been supplied. In reviewing the record of Debtors' bankruptcy proceeding, the Petition for Attorney Fees, and the itemization attached thereto, the Court concludes that an award of additional attorney fees is not justified in this case. Debtors' attorney indicates that he has been paid in excess of $23,000 in fees, and the Debtors indicate that the attorney has been paid in excess of $32,000. Regardless of which amount is correct, the Court concludes that Debtors' attorney has been sufficiently compensated for the services which he has performed, in light of the results obtained. Thus, the Petition for Attorney Fees, filed on September 21, 2001, must be denied.

■ Finally, the Court turns to the Motion for Leave to Withdraw Attorney Appearance filed by Debtors' attorney, on December 18, 2001, and the objection thereto filed by the Debtors on January 10, 2002, in the form of a Motion to Deny Motion for Leave to Withdraw Attorney Appearance. In reviewing the Motion for Leave to Withdraw Attorney Appearance, the objection filed by the Debtors on January 10, 2002, and the record of Debtors' bankruptcy proceeding, the Court finds that many conflicts have arisen between the Debtors and their attorney, such that the Motion for Leave to Withdraw Attorney Appearance should be allowed. The most significant conflict which exists concerns the Debtors' desire to litigate issues concerning the 1993, 1994, and 1995 real estate tax claims on behalf of Kankakee County, and their attorney's belief that he has done all that can be done regarding these matters. Further, from a review of the record of the Debtors' bankruptcy proceeding, it is clear that the Debtors have had on-going misunderstandings as to the effect of their Chapter 13 bankruptcy, and communications between the Debtors and their attorney have failed to rectify these misunderstandings. Although the Debtors did complete payment of their Amended Chapter 13 Plan, the record of this proceeding reflects that many instances of non-payment occurred along the way. The record reflects that, not only were the Debtors very sluggish in their payments to the Chapter 13 Trustee, but they were also less than diligent in their payments to various mortgage holders and in their payments to Kankakee County for real estate taxes. Ultimately, it is apparent that the Debtors continue to have significant delinquencies for real estate taxes due for the years following their original bankruptcy filing, in December 1989, which were not and could not be resolved by their Amended Chapter 13 Plan, for the reason that said taxes were either post-petition and not properly includable in their Plan, or were not scheduled as debts for which claims could have been filed. In all, it is apparent that the relationship between the Debtors and their attorney has deteriorated to a point where it is necessary that Debtors' attorney be allowed to withdraw as counsel of record.

At this time, the Court having disposed of all pending matters in this proceeding, including the Petition for Attorney Fees and the Motion for Leave to Withdraw Attorney Appearance, it is incumbent upon the Chapter 13 Trustee to pay monies remaining in his hands to creditors who have properly filed claims, such that their

percentage of recovery will be increased. Once this has been accomplished, the case should proceed to discharge and closing at the earliest possible moment.

### ORDER

For the reasons set forth in an Opinion entered on the _____ day of February 2002;

IT IS HEREBY ORDERED that:

A. The Motion to Reinstate Motion for Civil Contempt filed on August 30, 2001, is *DENIED*;

B. The Petition for Attorney Fees filed on September 21, 2002, is *DENIED*;

C. The Motion for Leave to Withdraw Attorney Appearance filed on December 18, 2001, is *ALLOWED*; and,

D. The Motion to Deny Motion for Leave to Withdraw Attorney Appearance, taken by the Court as an objection to the Motion for Leave to Withdraw Attorney Appearance, filed by the Debtors *pro se* on January 10, 2002, is *DENIED*.